[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Horton v. Kilbane*, Slip Opinion No. 2022-Ohio-205.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-205

THE STATE EX REL. HORTON *v*. KILBANE, CHIEF OF POLICE, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Horton v. Kilbane*, Slip Opinion No. 2022-Ohio-205.]**

*Public records—Writ of mandamus sought to compel police chief and city to produce documents relating to the city's implementation of a traffic-ticket quota—Writ denied; statutory damages awarded; attorney fees and costs denied.*

(No. 2020-0348—Submitted September 7, 2021—Decided February 1, 2022.)

IN MANDAMUS.

————————————

**Per Curiam.**

**{¶ 1}** In this public-records case, relator, Mary Jane Horton, requests a writ of mandamus ordering respondents, Police Chief Michael Kilbane and the city of Independence (collectively, "the city"), to produce documents relating to the city's implementation of a traffic-ticket quota.  She also seeks statutory damages, attorney

fees, and costs. For the reasons that follow, we deny her request for a writ, award her $1,000 in statutory damages, and deny her requests for attorney fees and costs.

## I. FACTUAL BACKGROUND

{¶ 2} On January 14, 2019, Horton saw a local-news broadcast notifying viewers that Independence had implemented a policy requiring each of its police officers to issue ten or more traffic citations per month and requiring at least two to three traffic-enforcement actions per shift. The broadcast displayed documents as evidence of this policy. The broadcast also informed viewers that an officer had filed a grievance with the city through his union after receiving a written warning for not writing enough tickets.

{¶ 3} On January 16, 2019, Horton emailed a public-records request to the police department requesting the following records:

> 1. The police memo that shows a "…Productivity Standard…Patrol Officers shall meet or exceed 10 traffic citations/month."
>
> 2. The memo that refers to "…at least 2-3 traffic enforcement actions per shift." Those can include warnings or crash investigation and more, not just tickets.
>
> 3. A copy of the written warning given to the police officer who did not write enough tickets.
>
> 4. A copy of the grievance that was filed by the police officer in this case.

(Ellipses sic.)

{¶ 4} The next day, Kilbane responded to Horton's email as follows:

- Item 1: email from Lt. Mazzola to the patrol officers regarding performance standards

- Item 2: We have no records responsive to this request. If you have a specific date, sender, receiver or any other identifying information to more specifically identify a record we can attempt to locate it.

- Item 3: Written reprimand for failure to adhere to performance standards.

- Item 4: We have no records responsive to this request. Per the terms of the collective bargaining agreement the grievance was denied by the Chief and returned to the union. The union subsequently withdrew their grievance and it is in possession of the union, not the city. The union is not a public entity and as such they are not required to release any of their records to the public.

There are a total of three pages in response to your records request and you may obtain copie[s] from the police department records division Monday through Friday between 8:00 A.M. and 4:00 P.M. at a cost of ten cents per page.

Horton paid for and retrieved the records.

**{¶ 5}** On March 9, 2020, more than 400 days after her request, Horton brought this action, alleging that the city had violated the Public Records Act in responding to request Nos. 2, 3, and 4.

**{¶ 6}** The city then produced four additional documents. On March 11, 2020, the city produced a memo dated August 8, 2018 ("the August memo"), in response to request No. 2 and a new version of the reprimand, which had been

issued to Patrolman Brian Dalton, in response to request No. 3. The new version of the reprimand contained markings on the bottom half of the page that were not present on the prior version produced. On March 17, 2020, the city produced an unsigned version of the grievance described in request No. 4. And on March 26, 2021, the city produced another version of the grievance, this one containing Dalton's signature.

{¶ 7} On March 17, 2021, we granted an alternative writ ordering the submission of evidence and briefs. 161 Ohio St.3d 1477, 2021-Ohio-801, 164 N.E.3d 486. Before turning to our analysis, we note that we will not consider the new arguments that Horton has raised for the first time in her reply brief. *See State ex rel. Am. Subcontractors Assn., Inc. v. Ohio State Univ.*, 129 Ohio St.3d 111, 2011-Ohio-2881, 950 N.E.2d 535, ¶ 40 ("[relator's] new argument in its reply brief is forbidden").

## II. ANALYSIS

### A. Writ of mandamus

{¶ 8} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1)(b). To obtain the writ, Horton must show that she has a clear legal right to the requested relief and that the city has a clear legal duty to provide it. *State ex rel. Ellis v. Maple Hts. Police Dept.*, 158 Ohio St.3d 25, 2019-Ohio-4137, 139 N.E.3d 873, ¶ 5. Although we construe the Public Records Act liberally in favor of broad access and resolve any doubts in favor of disclosure, the relator still bears the burden to establish entitlement to the requested relief by clear and convincing evidence. *State ex rel.*

4

*Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 19.[1]

*1. The reprimand (request No. 3)*

**{¶ 9}** The third item Horton requested was a copy of the reprimand issued to Dalton. The city has already produced two versions of this document. First, the day after Horton made her request, the city produced a copy of the reprimand. This copy did not contain Dalton's signature acknowledging his receipt of the reprimand ("the unsigned reprimand"). The document contained typewritten text on the top half of the page and showed the sender (Lt. Len Mazzola), the direct recipient (Dalton), the copied recipient (Kilbane), the date (January 7, 2019), and the reason for the reprimand. After Horton brought this action, the city produced a signed version ("the signed reprimand") containing text on the bottom half of the page. A typewritten sentence, authored by Mazzola, stated: "Please sign below acknowledging receipt of this written reprimand." Below that sentence is a line for Dalton's signature and another typewritten sentence that stated: "Please let me know if there is anything I can do to help moving forward to avoid any issues." In the space near the signature line, Dalton added his handwritten signature and the following handwritten statement: "REFUSED NO JUST CAUSE! I HAVE THREATENED [sic] AND AM SIGNING THIS UNDER DURESS!" (Capitalization sic.)

**{¶ 10}** Dispositive here is that Horton specified in her merit brief that the document she received on March 11, 2020, satisfied her request. And to the extent that she indicates in her reply brief that she now seeks a third version of the reprimand—one containing Mazzola's typewritten statements but not Dalton's signature or handwritten statement—Horton has impermissibly broadened the scope of her request. It follows that we must deny the writ as to request No. 3.

---

1. We apply the version of the Public Records Act in effect at the time of Horton's request. *See State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 14, fn. 2. The version that took effect on November 2, 2018, controls. *See* 2017 Sub.H.B. No. 312.

*2. The grievance (request No. 4)*

**{¶ 11}** Horton argues that with regard to the fourth item she requested, the city should have responded by providing a version of Dalton's grievance that contains Kilbane's written markings memorializing his decision to deny the grievance. But the city presented evidence establishing that it does not possess the record, because Kilbane gave it to the union. Because a public office does not have a clear legal duty to furnish records that are not in its possession or control, *see State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 28 (collecting cases), we deny the writ as to request No. 4.

**{¶ 12}** The line of decisions that Horton cites does not require a different result. Unlike in *State ex rel. Toledo Blade v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, our issuance of a writ here would require a search of the union's property, not a public office's. And unlike the county board of commissioners and the lawyer in possession of the record at issue in *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 684 N.E.2d 1222 (1997), nothing establishes that an agency relationship exists between the city and the union. True, we held in *State ex rel. Dispatch Printing Co. v. Columbus*, 90 Ohio St.3d 39, 41-43, 734 N.E.2d 797 (2000), that a collective-bargaining agreement between a police department and a union could not defeat a newspaper's request for records held by the department. But here, the record in question is not held by the department.

**{¶ 13}** Horton also errs in her reliance on *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, and *State ex rel. Gannett Satellite Information Network v. Shirey*, 78 Ohio St.3d 400, 678 N.E.2d 557 (1997). First, she ignores *Carr*'s tripartite test for evaluating a mandamus claim when a private entity has responsibility over the requested record. Second, she fails to show that the union's actions in this case are of similar character to those of the company in *Gannett* that rendered employee-hiring services to the public office.

***B. Statutory damages***

{¶ 14} Horton requests statutory damages with respect to the August memo, the reprimand, and the grievance.

{¶ 15} R.C. 149.43(C)(2) provides that a requester who transmits a public-records request by electronic submission, as Horton did, in a manner that fairly describes the requested records, shall be entitled to statutory damages if a court determines that the public office failed to comply with an obligation of R.C. 149.43(B). Statutory damages accrue at the rate of $100 for each business day the office failed to meet one of R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000. R.C. 149.43(C)(2). In evaluating Horton's damages claims, we focus on whether the city complied with its duty to make the requested records available within a "reasonable period of time." R.C. 149.43(B)(1).

*1. The August memo (request No. 2)*

{¶ 16} Horton argues that the city took an unreasonable length of time to produce the August memo, noting that 13 months elapsed from the time she submitted her request to the time she received the record. She also says that her request was specific enough to enable Kilbane to locate the record.

{¶ 17} Horton points to a long line of decisions in which this court has held public offices responsible for failing to timely produce records. *See, e.g., State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 624, 640 N.E.2d 174 (1994) (four-month delay from the date of the request); *State ex rel. Consumer News Servs., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 38-39 (six-day delay from the date of the request).

{¶ 18} In response, the city cites no case in which this court has held that a 13-month delay was reasonable. Instead, it stresses several aspects of Kilbane's conduct, suggesting that he exhibited good faith in handling Horton's request. But a public office's good or bad faith is irrelevant in a statutory-damages analysis. *See*

*State ex rel. Ware v. Akron*, 164 Ohio St.3d 557, 2021-Ohio-624, 174 N.E.3d 724, ¶ 18.

{¶ 19} The city next argues that Horton's request gave Kilbane "just eight words to go on," noting Kilbane's response to her that if she could supply a "date, sender, receiver or any other identifying information to more specifically identify [the] record [his office could] attempt to locate it." Although Horton bore the responsibility of identifying with reasonable clarity the records at issue, we have "never held that in order to constitute a viable request, the requester must specify the author and date of the records requested," nor have we "require[d] perfection in public-records requests." *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 29, 37. Here, Horton attached to her request a copy of the news article in which Kilbane spoke about the traffic-ticket-quota system. And Horton's email stated that the article was what "gave rise" to her request. Reviewing Horton's request as a whole, we find that it was reasonably clear what she was asking for.

{¶ 20} The city also contends that it should not be held responsible for the "lax and inappropriate storage habits" of the memo's author, Mazzola, who, the city says, should have stored the memo in electronic format in the city's system rather than as a paper copy on his desk. We decline the city's invitation to adopt a rule that relaxes a public office's accountability under the Public Records Act. *See Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 16 ("Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance").

{¶ 21} Last, the city says that the law firm representing Horton received the August memo before she filed her mandamus action, thus implying that Horton had not had to wait 13 months to receive the memo. The city points to a public-records request the firm sent on behalf of a different client and notes that the city produced

the memo to the firm on July 31, 2019, in response to that request. But the duty to produce responsive records under the Public Records Act runs to the "public office." R.C. 149.43(B)(1) and (2). Indeed, "[n]othing in the text of the Public Records Act excuses a public office from its duty to supply records upon a showing that the requester has obtained the record from a third party." *State ex rel. Summers v. Fox*, 163 Ohio St.3d 217, 2020-Ohio-5585, 169 N.E.2d 625, ¶ 39.

**{¶ 22}** In summary, the city's delay in producing the August memo was unreasonable.

*2. The reprimand (request No. 3)*

**{¶ 23}** Horton also seeks damages for the city's delay of 13 months in producing the signed reprimand.

**{¶ 24}** In response, the city repeats its arguments that Kilbane acted in good faith and that Mazzola's lax record-keeping habits cannot be a basis for liability. These arguments fail for the reasons given above.

**{¶ 25}** Next, the city points to Horton's use of the phrase "given to" in request No. 3 (which sought a "copy of the written warning *given to* the police officer who did not write enough tickets" [emphasis added]), claiming that the reprimand containing Dalton's own handwritten text was not "given to" him. This argument founders because the city filed an affidavit attesting that the signed reprimand "is a document responsive to Item 3 of Relator's public records request to the City."

**{¶ 26}** Last, the city says it has no duty to produce information it acquired after the request was made, pointing to Kilbane's statement that he "did not receive a copy of the reprimand as modified by Lt. Mazzola and signed by Patrolman Dalton until February 13, 2019." Although the city accurately states the rule, *see State ex rel. Scanlon v. Deters*, 45 Ohio St.3d 376, 378-379, 544 N.E.2d 680 (1989), *overruled on other grounds*, *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 639 N.E.2d 83 (1994), it is of no help to the city here because Horton did not limit

her request to documents received by Kilbane. Rather, she sought records kept by the police department.

{¶ 27} In summary, the city's delay in producing the signed reprimand was unreasonable.

### 3. The grievance (request No. 4)

{¶ 28} We deny Horton's request for damages with respect to the city's failure to produce the version of the grievance containing Kilbane's written denial, because, as explained above, the city's failure to produce a document outside its possession or control is not a violation of R.C. 149.43(B). *See Striker*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, at ¶ 28.

{¶ 29} We note, however, that the city did not produce the second version of this document—the version containing Dalton's signature but not Kilbane's written denial—until March 26, 2021. The document bears a handwritten date of January 11, 2019, next to Dalton's signature. And Kilbane testified that at the time of Horton's request, he had already denied the grievance. Necessarily, then, that document existed before Horton sent her request, and the city does not argue otherwise. In our view, this document is responsive to Horton's request seeking a "copy of the grievance that was filed by" Dalton. The city's failure to produce the document for over a year after Horton filed this action constitutes an unreasonable delay.

### 4. Calculating statutory damages

{¶ 30} To recap, the city unreasonably delayed its production of three documents: the August memo, the signed reprimand, and the second version of the grievance. Because the unreasonable delay associated with the city's production of the second version of the grievance persisted for more than ten business days from the filing of this action, we award Horton $1,000 in statutory damages. *See* R.C. 149.43(C)(2). Although the city also did not timely produce the August memo and the signed reprimand, the city's delay in producing these documents does not entitle

Horton to additional damages. *See State ex rel. Dehler v. Kelly*, 127 Ohio St.3d 309, 2010-Ohio-5724, 939 N.E.2d 828, ¶ 4 (observing that R.C. 149.43 "does not permit stacking of statutory damages based on what is essentially the same records request").

### C. Attorney fees

**{¶ 31}** Horton argues that she is entitled to attorney fees based on Kilbane's alleged bad faith in how he responded to her request. Under R.C. 149.43(C)(3)(b)(iii), we "may" award attorney fees to a relator if we determine that a public office "acted in bad faith when [it] voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not the [office] was required to comply with division (B)" of R.C. 149.43. We have described bad faith in the following way:

> " 'The term "bad faith" generally implies something more than bad judgment or negligence.' " *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, 2008 WL 2896658, ¶ 13. Bad faith " ' "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." ' " *Id.*, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983), quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus, *overruled on other grounds*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus.

*State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 26.  For the following reasons, we deny Horton's request for attorney fees.

*1. The August memo (request No. 2)*

{¶ 32} Horton argues that Kilbane acted in bad faith with respect to the August memo.  As proof of bad faith, she cites the conflict between Kilbane's deposition in this case, in which he denied having knowledge of the memo at the time of Horton's January 2019 request, and his deposition in an unrelated case, in which he admitted that he had had knowledge of the memo in September 2018 but could not recall having seen it.  She also points to the lack of thoroughness of Kilbane's search, noting that after Kilbane failed to locate the August memo via an electronic search, he made no attempt to ask others about the memo's whereabouts or look through paper records for the document.

{¶ 33} Kilbane's shifting descriptions concerning the timing of his knowledge of the memo are admittedly questionable.  And the facts of this case establish that the city's method of storing records electronically is not perfect.  Indeed, Kilbane acknowledged that within his department, there could be paper records that were not also stored electronically in the city's system, saying that he might go into a colleague's office to retrieve a document if necessary but that he did not need to do so in this case, because "the city had documents that were responsive to the request."

{¶ 34} Even so, we do not discern bad faith.  The August memo predates Horton's request by about five months, so it is not inconceivable that Kilbane would have failed to remember it given the passage of time.  Further, in July 2019, he produced the document to Horton's counsel in an unrelated case.  Had Kilbane truly wanted to shroud this document from public scrutiny, it is unlikely that he would have produced the document to anyone, let alone Horton's counsel.  True, he should have produced the document to Horton when he produced it to her counsel in an

unrelated case, but that oversight is not indicative of bad faith, for it is understandable that Horton's request was not at the forefront of Kilbane's mind following the city's initial records production in January 2019. On balance, the most we can say here is that Kilbane exercised bad judgment.

### 2. *The reprimand (request No. 3)*

{¶ 35} Horton argues that Kilbane acted in bad faith by not looking through paper records or asking colleagues for the signed version of the reprimand, pointing out that Kilbane knew about this version because one week before Horton submitted her request, he told Mazzola to obtain Dalton's signature on the document. We disagree. Kilbane responded to Horton within a day, producing the version he found via electronic search. Given that this version lays out the material facts for why Dalton received a reprimand, we cannot conclude that Kilbane was trying to mislead or deceive her. What is more, Kilbane brought the signed version of the reprimand to light in July 2019, producing it to Horton's counsel in an unrelated case. To repeat what we have just said, had Kilbane wanted to avoid scrutiny of the document, it is unlikely that he would have produced it at all. The fact that he failed to produce it to Horton when he produced it to her counsel in an unrelated case strikes us as the product of oversight, not bad faith.

{¶ 36} Horton next argues that Kilbane had redacted a portion of the copy that he gave her on the day after she submitted her request. In support, she points to an obscured watermark on the unsigned reprimand—the lowermost portion appears to have been covered over with another piece of paper—appearing roughly halfway down the page. But when Horton's counsel asked Kilbane about the watermark at his deposition, Kilbane explained that the copy he gave her the day after she submitted her request is the one he printed from his hard drive, noting that he was unfamiliar with how the department imprints watermarks onto its documents. We cannot assign bad faith based on Horton's speculation.

*3. The grievance (request No. 4)*

**{¶ 37}** Horton argues that Kilbane acted in bad faith by "purging" the version of the grievance containing Kilbane's denial. But R.C. 149.43(C)(3)(b)(iii)'s bad-faith language applies to situations in which the requested record was made available "for the first time after the relator commenced the mandamus action, but before the court issued any order" deciding whether the public office was required to turn over the document in order to comply with the Public Records Act. Here, the grievance containing Kilbane's markings has still not been produced, because the city does not have it, so the statute's language does not apply. And we disagree with the assertion that Kilbane sought to purge his department of this record. Kilbane has explained that after he denied Dalton's grievance, he returned it to the union consistently with his understanding of the city's collective-bargaining agreement. Kilbane's failure to retain a copy for himself does not constitute bad faith.

### *D. Costs*

**{¶ 38}** Ohio law directs a court to determine and award all costs if it orders a public office to comply with R.C. 149.43(B) or finds that the office acted in bad faith as set forth in R.C. 149.43(C)(3)(b)(iii). R.C. 149.43(C)(3)(a)(i) to (ii). Because Horton is not entitled to the writ and Kilbane did not act in bad faith, Horton is not entitled to costs.

### III. CONCLUSION

**{¶ 39}** In summary, we deny Horton's request for a writ, award her $1,000 in statutory damages, and deny her requests for attorney fees and costs.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, STEWART, and BRUNNER, JJ., concur.

DONNELLY, J., concurs in part and dissents in part and would award attorney fees.

_____

The Chandra Law Firm, L.L.C., Subodh Chandra, Donald P. Screen, and Brian Bardwell, for relator.

Taft, Stettinius & Hollister, L.L.P., Gregory J. O'Brien, and Philip D. Williamson, for respondents.

_____