**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Fluty v. Raiff,* Slip Opinion No. 2023-Ohio-3285.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3285

THE STATE EX REL. FLUTY *v*. RAIFF, CHIEF OF POLICE, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Fluty v. Raiff,* Slip Opinion No. 2023-Ohio-3285.]**

*Mandamus—Public-records requests—R.C. 149.43—Requester failed to present clear and convincing evidence establishing existence of a requested record—Requested record was not incorporated into another for purposes of Public Records Act—R.C. 149.43(B) does not require a public office to confirm delivery of a requested record—A public-records custodian may redact from an incident report identity of an uncharged suspect provided requirements of R.C. 149.43(A)(2)(a) are met—Requirements of R.C. 149.43(A)(2)(a) are met when release of record would create high probability of disclosing identity of an uncharged suspect—Public Records Act does not authorize an award of statutory damages merely because a public office cites legal authority with which requester disagrees—Writ and requests for statutory damages, attorney fees, and court costs denied.*

(No. 2021-1250—Submitted May 16, 2023—Decided September 19, 2023.)

IN MANDAMUS.

————————

**Per Curiam.**

{¶ 1} This is an original action in mandamus brought under Ohio's Public Records Act, R.C. 149.43, by relator, Ashley Fluty, against respondents, the city of Broadview Heights; its police chief, Steven G. Raiff; its law director, Vince Ruffa; and its records clerk, Eric Grossnickle (collectively, "Broadview Heights"). Fluty seeks a writ of mandamus to compel Broadview Heights to produce records related to an incident of suspected child abuse. Fluty also requests awards of statutory damages, attorney fees, and court costs. We deny all the requested relief.

## I. BACKGROUND

{¶ 2} On November 3, 2020, a student at the Insightful Minds Community of Learning, a school that tailors to children with behavioral needs, climbed on top of a mat located in one of the school's seclusion rooms. Ochanya McRoberts, the director of the school, asked the student to come down from the mat, and when the student refused, McRoberts pulled the mat, causing the student to fall to the ground. The school internally investigated the incident, and the student's parents reported it to the Broadview Heights Police Department as a case of possible child abuse.

{¶ 3} After the school interviewed Fluty, a teacher at the school, about the matter, McRoberts brought a defamation suit against Fluty. McRoberts apparently did so because Fluty conveyed her understanding of what happened based on a video of the incident and because she shared her opinions of McRoberts's effectiveness as a supervisor. On March 31, 2021, Fluty's counsel, Brian Bardwell, sent a request through the Broadview Heights Police Department's online public-records portal seeking "the initial incident report, along with any narrative supplements, witness statements, etc." regarding the November 3, 2020 incident.

{¶ 4} Grossnickle fielded Bardwell's request and consulted with Raiff. On Ruffa's advice, Raiff had written a letter in December 2020 to the student's mother rejecting her request for records regarding the same incident. In that letter, Raiff explained that the records could not be released because they were confidential law-

enforcement investigatory records ("CLEIR") "that w[ould] reveal the identity of an uncharged suspect in connection with the investigated conduct." Consistent with Raiff's earlier approach as to the mother's request, less than a half hour after Bardwell submitted his request, Grossnickle sent an email to Bardwell, to which he attached Raiff's December 2020 letter and in which he explained that the records would not be released but that Bardwell could follow up with Ruffa to discuss the matter further.

{¶ 5} Fifteen minutes later, Bardwell emailed Grossnickle to ask him to release the records with redactions of what Bardwell termed the "exempt information." Grossnickle again responded that the records would not be released but that Bardwell could contact Ruffa to discuss the matter further. Bardwell emailed Grossnickle that night and, citing R.C. 149.43 and quoting a passage from *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511 (2001), stated his view as follows: "[T]he Ohio General Assembly and the Ohio Supreme Court have already authorized you to release the report to me." Grossnickle did not respond.

{¶ 6} On April 1, 2021, Bardwell called Ruffa and secretly recorded their conversation. Bardwell told Ruffa that he was "trying to get [his] hands on an incident report." Ruffa responded, "We're not releasing that * * * record * * * [b]ecause it's a confidential law enforcement investigatory record." Bardwell then told Ruffa that in *Maurer*, this court "held that initial incident reports * * * are not confidential law enforcement investigatory records. And if they were, they need to be released, except to the extent that they disclose certain types of information, and * * * that type of information can be redacted, but the rest of it needs to be released." Ruffa, in response, explained that under the CLEIR exception, "if the record pertains to a law enforcement matter of a criminal nature, where the release would create the high probability of disclosing the identity of an uncharged suspect, it's not releasable." Bardwell agreed, saying, "[I]n that case, yes, the correct procedure

is to redact the name of the uncharged suspect and release the record." Ruffa responded, "[T]hat may be right," agreed to look at R.C. 149.43, and said he would get back to Bardwell.

{¶ 7} Later that day, Ruffa emailed a packet of records to Bardwell, along with the accompanying message: "Attached are the records you requested. Per our discussion, the name of the uncharged suspect has been redacted. Please let me know you received this email and call if you have any questions." The records contained a document titled "Incident/Offense Report" and dated November 17, 2020, from the Broadview Heights Police Department; a document titled "Investigative Report" and dated November 20, 2020, from the Broadview Heights Police Department; handwritten statements from McRoberts, the student's mother, and a schoolteacher, all dated November 17, 2020; and the school's November 2020 findings from its investigation. Ruffa redacted McRoberts's name from each of these records. The investigative report referred to two videos attached to it— one of the police department's interview with McRoberts and the other of the incident itself—but Ruffa did not send the videos. The evidence also establishes that, for unknown reasons, Bardwell never received Ruffa's email.

{¶ 8} Fluty filed this mandamus action on October 5, 2021, at which point Ruffa learned that Bardwell had not received the April 1, 2021 email with the packet of records attached. Fluty acknowledges in her brief that on October 25, 2021, counsel for respondents emailed Bardwell the "redacted report."

{¶ 9} In December 2021, Broadview Heights released the unredacted packet of records and the two videos to Bardwell after learning that McRoberts, who had been considered an uncharged suspect, publicly disclosed her identity by filing suit against Fluty.

## II. ANALYSIS

### A. *Motions*

{¶ 10} Broadview Heights issued a subpoena to the Chandra Law Firm, L.L.C., a nonparty that formerly employed Bardwell, seeking a deposition concerning email correspondence between Bardwell and Broadview Heights. Both Fluty and the Chandra Law Firm have filed motions asking this court to quash this subpoena. Broadview Heights has since withdrawn the subpoena, so we deny these motions as moot.

{¶ 11} Fluty also asks this court to compel Broadview Heights to produce written discovery relating to "Ruffa's email server logs." Fluty states that the server logs would help establish whether Broadview Heights made any attempt to comply with her request. Because Broadview Heights has since produced to Fluty a log listing the emails Ruffa sent on April 1, 2021, we deny the motion as moot.

{¶ 12} Last, Fluty asks this court to set this case for oral argument. We deny the motion because none of the factors in support of oral argument is present and the parties' briefs are sufficient to resolve the issues raised. *See State ex rel. Lorain v. Stewart*, 119 Ohio St.3d 222, 2008-Ohio-4062, 893 N.E.2d 184, ¶ 17-21; *see also* S.Ct.Prac.R. 17.02(A).

### B. *Mandamus*

{¶ 13} Mandamus is an appropriate remedy to compel compliance with Ohio's Public Records Act. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1)(b). To obtain the writ, Fluty must show that she has a clear legal right to the requested relief and that Broadview Heights has a clear legal duty to provide it. *See State ex rel. Ellis v. Maple Hts. Police Dept.*, 158 Ohio St.3d 25, 2019-Ohio-4137, 139 N.E.3d 873, ¶ 5.

{¶ 14} Despite Broadview Heights's release of the unredacted packet of records and the videos in December 2021, Fluty maintains that Broadview Heights

still has not produced a "call screen" record and a letter written by Ruffa in which he said that McRoberts should not be criminally charged.

{¶ 15} The evidence establishes that the police department's dispatch center will typically generate a call-screen record when it receives a 9-1-1 call. The call-screen record reflects the information that the dispatch center received during the call. As Broadview Heights correctly argues, the police department would not have generated a call-screen record because the incident was reported by way of an in-person visit at the Broadview Heights Police Department rather than a 9-1-1 call. Raiff's deposition testimony reinforces this conclusion—when asked whether the incident/offense report included a call-screen record, Raiff answered, "No." Because Fluty has not presented clear and convincing evidence establishing the existence of a call-screen record, her mandamus claim seeking production of such a record fails. *See State ex rel. Griffin v. Sehlmeyer*, 166 Ohio St.3d 258, 2021-Ohio-3624, 185 N.E.3d 58, ¶ 4 (mandamus will not lie to compel the production of a nonexistent record).

{¶ 16} As to Ruffa's letter, Raiff has explained that Ruffa sent it to the police department as an attachment to "the report." Although Fluty did not ask for Ruffa's letter when she sent her original request, she now argues that Broadview Heights should be ordered to produce it because, she says, Ruffa "incorporated" it into the records that her counsel had requested.

{¶ 17} Fluty points to *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511, to support her argument. Before going further, a caveat regarding *Maurer* is appropriate. As we explain below when addressing Fluty's request for statutory damages, *Maurer*'s rule requiring disclosure of incident reports in unredacted form, which we refer to as *Maurer*'s "core holding," is no longer good law. But *Maurer*'s analysis of whether one record may be incorporated by reference into another for purposes of the Public Records Act still applies.

**{¶ 18}** In *Maurer*, a deputy sheriff had prepared an incident report after a law-enforcement officer shot and killed a person. *Id.* at 54. In a space on the incident report used to describe the events, the deputy sheriff wrote "taped narrative" and attached transcribed statements from several law-enforcement officers who were present at the scene. *Id.* In response to requests for the incident report, the sheriff's office produced the incident report and the attached transcripts but redacted the law-enforcement officers' names to avoid potentially disclosing the identity of an uncharged suspect. *Id.* at 55. This court determined that the incident report constituted a public record and was not subject to the CLEIR exception. *Id.* at 56. The sheriff's office therefore had to release an unredacted version of the incident report despite the risk that it might reveal an uncharged suspect's name. *Id.* ("incident reports initiate criminal investigations but are not part of the investigation"). This court also determined that the attached transcripts were public records, reasoning that because the deputy sheriff had "incorporated [them] by reference in the incident report," he had "consequently incorporated them in a public record." *Id.* at 57.

**{¶ 19}** Fluty reads *Maurer*'s analysis of the incorporation issue too broadly. We did not hold there that anything attached to a public record automatically becomes incorporated into the public record to which it is attached. The deputy sheriff in *Maurer* affirmatively incorporated the attachments by making a notation on the incident report that directly referred to them. This case is distinguishable from *Maurer* because the incident/offense report at issue lacks such a notation to Ruffa's letter.

**{¶ 20}** In summary, we deny Fluty's request for a writ of mandamus.

### C. Statutory damages

**{¶ 21}** "R.C. 149.43(C)(2) provides that a requester who transmits a public-records request by electronic submission * * * in a manner that fairly describes the requested records, shall be entitled to statutory damages if a court determines that

the public office failed to comply with an obligation of R.C. 149.43(B)." *State ex rel. Horton v. Kilbane*, 167 Ohio St.3d 413, 2022-Ohio-205, 194 N.E.3d 288, ¶ 15. A requester is entitled to receive "$100 for each business day the office failed to meet one of R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000." *Id.*, citing R.C. 149.43(C)(2).

{¶ 22} Fluty advances two main arguments to support her claim for an award of statutory damages. First, she argues that Broadview Heights failed to "make copies of the requested public record available," as required under R.C. 149.43(B)(1). Second, she says that Broadview Heights did not provide her with an "explanation, including legal authority, setting forth why the request was denied," as required by R.C. 149.43(B)(3).

### 1. The packet of records and videos

{¶ 23} We begin by examining the redacted packet of records that Ruffa sent to Bardwell by email on April 1, 2021. The uncontradicted evidence establishes both that Ruffa sent the email and that Bardwell did not receive it. Although neither side explains this anomaly, we conclude that Ruffa did all that was necessary under the law to make the packet of records available to Bardwell.

{¶ 24} Nothing in R.C. 149.43(B) requires a public office to confirm delivery of an email or to follow up to ensure receipt. And we have said that a "public-records requester has an obligation to cooperate with the [public agency], including an obligation to inform the public agency when she feels that a request has been incomplete or slow." *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 565, 2015-Ohio-4914, 45 N.E.3d 981, ¶ 25. Here, over six months of silence passed before Fluty complained that she had not received any records.

{¶ 25} Fluty argues that even if Broadview Heights did make the packet of records available in a general sense, it still failed to *fully* make responsive records available within a reasonable time, because it redacted McRoberts's name from the packet in contravention of *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511. In response,

Broadview Heights contends that Bardwell agreed to the production of redacted records.

{¶ 26} As noted above, Bardwell initially sought "the initial incident report, along with any narrative supplements, witness statements, etc." He then expressed to Grossnickle that he would be satisfied by the production of records with "exempt information" redacted. Based on those facts, Broadview Heights could fairly say that Bardwell had agreed to accept redacted records.

{¶ 27} But later that same day, Bardwell invoked *Maurer* as "controlling law," quoted the case's statement that incident reports are public records notwithstanding the fact that their disclosure might unveil an uncharged suspect's identity, and explained to Grossnickle that *Maurer* provided authority for Broadview Heights to "release the report to [Bardwell]." After Bardwell invoked *Maurer*, Broadview Heights could not reasonably conclude that Bardwell would accept redacted records as satisfactory.

{¶ 28} The evidence of Bardwell's conversation with Ruffa the next day does not require a different result. In that conversation, Bardwell and Ruffa spoke about *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511, and the CLEIR exception for records containing the name of an uncharged suspect. The conversation concluded with Ruffa telling Bardwell that he would "take a look at [the Public Records Act] and give [Bardwell] a holler back." This further cuts against Broadview Heights's argument, for if Ruffa had reached an understanding with Bardwell over the phone that the redacted records would be sufficient to satisfy Bardwell's request, it is doubtful that Ruffa would have needed to look into the issue further after he concluded the phone call with Bardwell.

{¶ 29} Nevertheless, we conclude that Fluty is not entitled to statutory damages even though Broadview Heights did not release the unredacted packet of records and the videos until December 2021. Fluty places especial reliance on *Maurer* in seeking statutory damages, but its core holding—that the name of an

uncharged suspect on an incident report must be disclosed in unredacted form—cannot provide the basis for such an award.[1]  As we understand it, the crux of Fluty's argument is that *Maurer* articulated a bright-line rule requiring disclosure, for she describes the rule of *Maurer* as "clear," "unambiguous," and "firmly established."  Fluty overstates *Maurer*'s significance to this case.

**{¶ 30}** Our decision in *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, *superseded by statute on other grounds as stated in State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136, is instructive.  In that case, we cautioned that "in *Maurer*, we did not adopt a per se rule that all police offense-and-incident reports are subject to disclosure notwithstanding the applicability of any exemption."  *Id.* at ¶ 55.  Rather, we explained that *Maurer* was a product of the "facts of that case."  *Akron* at ¶ 55.

**{¶ 31}** Based on *Akron* alone, we cannot agree with Fluty that Broadview Heights departed from any requirements under *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511, by redacting McRoberts's name from the packet of records or withholding the videos, or that as a consequence of failing to adhere to *Maurer*, Broadview Heights shirked its obligations under R.C. 149.43(B).

**{¶ 32}** Even if there were a lack of clarity about *Maurer* following *Akron*, awarding statutory damages here would create a windfall contrary to our precedent, *see State ex rel. Dehler v. Kelly*, 127 Ohio St.3d 309, 2010-Ohio-5724, 939 N.E.2d 828, ¶ 4 ("no windfall is conferred by the statute" authorizing statutory damages).  During this case's pendency, we announced our decision in *State ex rel. Sultaana v. Mansfield Corr. Inst.*, __ Ohio St.3d __, 2023-Ohio-1177, __ N.E.3d __, which abandoned *Maurer*'s core holding.

---

1. Fluty appears to characterize the packet of records and the videos as forming an incident report. Broadview Heights contests this characterization, but for purposes of our analysis, we will assume that Fluty is correct.

**{¶ 33}** *Sultaana* involved, among other things, a request for incident reports related to assaults committed by prison inmates. *Id.* at ¶ 1, 3. The prison produced the reports but redacted the names and inmate numbers of the inmates involved in the assaults. *Id.* at ¶ 1. One of the grounds invoked by the prison to justify the redactions was that the inmate information was subject to nondisclosure under the CLEIR exception because, in its view, the information's release would have created a "high probability of disclosing the identity of an uncharged suspect" under R.C. 149.43(A)(2)(a). *Sultaana* at ¶ 26.

**{¶ 34}** In *Sultaana*, this court acknowledged the core holding of *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511, but we also pointed to *Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, and *State ex rel. Myers v. Meyers*, 169 Ohio St.3d 536, 2022-Ohio-1915, 207 N.E.3d 579. *Sultaana* at ¶ 29. In *Myers*, we held that "[e]ven the information that is included in an incident-report form may, in a proper case, be redacted under a public-records exception other than the specific-investigatory-work-product exception in R.C. 149.43(A)(2)(c)." *Id.* at ¶ 46.

**{¶ 35}** Based on this caselaw, we reasoned in *Sultaana* that "the inmate names and inmate numbers could still be exempt from disclosure under R.C. 149.43(A)(2)(a) as records pertaining 'to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the [information] would create a high probability of disclosure of * * * [t]he identity of a suspect who has not been charged with the offense to which the record pertains.' " (Brackets sic.) *Sultaana*, __ Ohio St.3d __, 2023-Ohio-1177, __ N.E.3d __, at ¶ 29, quoting R.C. 149.43(A)(2)(a). This court held that R.C. 149.43(A)(2)(a) did not apply, however, because the prison had not submitted evidence supporting its claim that the inmates were uncharged suspects. *Sultaana* at ¶ 30.

**{¶ 36}** Although *Sultaana* did not make the point explicitly, its analysis plainly vitiates *Maurer*'s core holding. Under *Sultaana*, a public-records custodian

may redact from an incident report the identity of an uncharged suspect provided the requirements of R.C. 149.43(A)(2)(a) are met. *Sultaana* at ¶ 29.

{¶ 37} The evidence here establishes that the requirements of R.C. 149.43(A)(2)(a) are met. From the time that Bardwell initially communicated with Grossnickle up to the time of Bardwell's phone call with Ruffa, Broadview Heights officials were concerned that releasing information containing McRoberts's identity would create a high probability of disclosing the identity of an uncharged suspect. Unquestionably, had Broadview Heights released the unredacted packet of records and the videos to Bardwell, McRoberts's identity would have been disclosed. The fact that McRoberts had apparently disclosed her identity to the public prior to Fluty's request by filing suit against Fluty or the fact that charges were never brought against McRoberts does not change the analysis. *See State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 447, 732 N.E.2d 969 (2000) ("The uncharged-suspect exemption may still apply even though the accusation of criminal conduct is already public knowledge"); *State ex rel. Master v. Cleveland*, 75 Ohio St.3d 23, 30, 661 N.E.2d 180 (1996) ("The uncharged-suspect exception applies despite the passage of time, the lack of enforcement action, or a prosecutor's decision not to file formal charges").

{¶ 38} We deny statutory damages as to the disclosure of the packet of records and the videos.

### 2. Broadview Heights's responses to Fluty's requests

{¶ 39} Fluty next argues that Broadview Heights provided an invalid explanation to her counsel for withholding the records because it failed to cite any supporting legal authority when it first denied her request. Fluty admits that Broadview Heights cited the uncharged-suspect exception but faults it for relying on this exception because *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511, "makes clear that that exemption is not a legal authority to withhold the report." Even if *Maurer*'s core holding were still good law, Fluty's argument fails because the

Public Records Act does not authorize an award of statutory damages merely because a public office cites legal authority with which the requester disagrees.

{¶ 40} Fluty also argues that Broadview Heights failed to provide her with a valid explanation and failed to cite any legal authority in responding to what she terms her "Second Request." Fluty appears to believe that her counsel created a new request when he sent a follow-up email to Grossnickle asking that he "[p]lease redact any exempt information and release the remainder of the record." But Bardwell's follow-up email did not create a "sufficiently different" request. *See State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 50. Rather, the follow-up email was a means of continuing and refining the conversation regarding the original request.

{¶ 41} Nor can we award statutory damages based on Fluty's claim that Broadview Heights took too long to initially inform her that she was not entitled to the videos. *See Myers*, 169 Ohio St.3d 536, 2022-Ohio-1915, 207 N.E.3d 579, at ¶ 73 (determining that because R.C. 149.43(B)(3) does not contain a timeliness requirement, "the city's delay in providing [the requester] with an explanation for its denial does not by itself entitle [the requester] to an award of statutory damages").

{¶ 42} We deny statutory damages because Broadview Heights's communications with Fluty's counsel did not fall below the standard prescribed by the Public Records Act.

### 3. The call-screen record and the Ruffa letter

{¶ 43} Last, Fluty argues that she is entitled to statutory damages because Broadview Heights failed to make available the call-screen record and the Ruffa letter. Based on our mandamus analysis above, Fluty is not entitled to statutory damages regarding the call-screen record or the Ruffa letter.

*D. Attorney fees*

**{¶ 44}** Fluty claims she is entitled to attorney fees because Broadview Heights acted in bad faith by disregarding *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511, in favor of its own policy preferences and by treating her arbitrarily. To develop her bad-faith argument, Fluty relies partly on deposition testimony in the record. Although R.C. 149.43(C)(3)(b)(iii) provides that "[n]o discovery may be conducted on the issue of the alleged bad faith of the public office," Broadview Heights does not argue that this provision bears on the analysis.

**{¶ 45}** Ohio law provides that a court "may" award reasonable attorney fees to a relator if it determines that a public office "acted in bad faith when [it] voluntarily made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not the [office] was required to comply with division (B)" of R.C. 149.43. R.C. 149.43(C)(3)(b)(iii). We have said:

> " 'The term "bad faith" generally implies something more than bad judgment or negligence.' " *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, 2008 WL 2896658, ¶ 13. Bad faith " ' "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." ' " *Id.*, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983), quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus, *overruled on other grounds*, *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus.

*State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 26.

{¶ 46} The record does not reveal bad faith on the part of Broadview Heights. To begin, the record does not show that Broadview Heights tried to mislead or deceive Fluty about its reasons for withholding McRoberts's identity or that a dishonest purpose underlaid Broadview Heights's conduct. Rather, the record establishes that Broadview Heights had a legitimate concern that the information sought in Fluty's request would disclose the identity of an uncharged suspect and that Broadview Heights repeatedly conveyed this concern to Fluty's counsel. Our caselaw has spoken to the reasons underlying such concerns, observing that the protections afforded to records containing the identities of uncharged suspects protect those persons from adverse publicity and facilitate the efforts of law enforcement to resolve cases. *See Ohio Patrolmen's Benevolent Assn.*, 89 Ohio St.3d at 447, 732 N.E.2d 969. We cannot assign bad faith to Broadview Heights for taking one or more of these concerns into account in responding to Fluty's request.

{¶ 47} Fluty maintains that Broadview Heights's position defies the core holding of *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511. But we have explained why, since the release of *Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, in 2004, *Maurer* cannot be read to support the per se rule that Fluty would have us apply. We have further explained that, in light of our decision in *Sultaana*, __ Ohio St.3d __, 2023-Ohio-1177, __ N.E.3d __, *Maurer*'s core holding is no longer any benefit to Fluty. Nor do we find that Broadview Heights elevated its subjective policy preferences over those embodied in the Public Records Act. We find that a more benign explanation fits here, which is simply that Broadview Heights strove in good faith to balance its Public Records Act obligations with its law-enforcement obligations.

**{¶ 48}** We do find it questionable that Broadview Heights apparently changed its policies regarding the release of incident reports around the time of the child-abuse allegation concerning Insightful Minds. Fluty points to Grossnickle's deposition testimony, in which he stated that prior to this case, he had never redacted the name of an uncharged suspect in responding to a request for an incident report. In his deposition testimony, Raiff identified the reason for the change in policy, explaining that he had felt uncomfortable releasing the records sought by Fluty because they disclosed the identity of an uncharged suspect who had allegedly engaged in misconduct toward a juvenile. It is not clear to us why this distinction matters. The question whether a document's release would create a high probability of disclosing the identity of an uncharged suspect would seemingly depend little, if at all, on whether the victim was a juvenile. That said, Raiff's solicitude for juvenile victims does not strike us as constituting bad faith.

**{¶ 49}** We deny attorney fees because Broadview Heights did not engage in bad faith.

### E. Court costs

**{¶ 50}** A court shall award all court costs if it orders the public office to comply with R.C. 149.43(B) or finds that the public office acted in bad faith under R.C. 149.43(C)(3)(b)(iii). *See* R.C. 149.43(C)(3)(a)(i) and (ii). Because Fluty is not entitled to a writ of mandamus and Broadview Heights did not engage in bad faith, we deny court costs.

### III. CONCLUSION

**{¶ 51}** For the foregoing reasons, we deny the writ, statutory damages, attorney fees, and court costs. We also deny Fluty's motion for oral argument, deny as moot her motion to compel and motion to quash, and deny as moot the Chandra Law Firm's motion to quash.

Writ denied.

STEWART, BRUNNER, and DETERS, JJ., concur.

KENNEDY, C.J., concurs, with an opinion joined by FISCHER and DEWINE, JJ.

DONNELLY, J., concurs in part and dissents in part and would award statutory damages.

———————————

**KENNEDY, C.J., concurring.**

{¶ 52} I agree with the majority that relator, Ashley Fluty, is not entitled to a writ of mandamus, statutory damages, attorney fees, or court costs. I write separately to emphasize that, in my view, *State ex rel. Beacon Journal Publishing Co. v. Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511 (2001), is overruled in part by today's decision in this case. Rejecting *Maurer*'s holding, this court now recognizes that a law-enforcement agency's record that reveals the identity of an uncharged suspect is not a public record, even if that information is contained in a routine police incident report.

{¶ 53} In *Maurer*, a newspaper submitted a public-records request for an incident report related to a police-involved shooting. *Id.* at 54. The sheriff released a copy of the report but redacted the names of the law-enforcement officers who were involved. *Id.* at 55. The newspaper sought a writ of mandamus from the court of appeals to compel the sheriff to produce an unredacted version of the incident report. *Id.* The court of appeals denied the writ. *Id.*

{¶ 54} This court reversed, ordering the court of appeals to issue a writ directing the sheriff to release an unredacted copy of the incident report. *Id.* at 58. This court acknowledged that a confidential law-enforcement investigatory record is not a public record and that a record pertaining to a law-enforcement matter is a confidential law-enforcement investigatory record if its release would create a high probability of disclosing the identity of an uncharged suspect. *Id.* at 56, citing R.C. 149.43(A)(1)(h) and (A)(2)(a). Nonetheless, we held that routine incident reports

are never confidential law-enforcement investigatory records because they initiate, but are not part of, an investigation, so the sheriff had to release an unredacted copy of the incident report "despite the risk that the report may disclose the identity of an uncharged suspect." *Id.* at 57. This court indicated that once the names of the uncharged suspects were included in the incident report, the custodian could not "remove the 'public records cloak.' " *Id.*, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 378, 662 N.E.2d 334 (1996). So even though the incident report in *Maurer* pertained to a law-enforcement matter and revealed the name of an uncharged suspect, this court required the sheriff to release it without redaction.

{¶ 55} *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511, was wrongly decided. When *Maurer* was issued, Ohio's Public Records Act exempted confidential law-enforcement investigatory records from release as public records, and it still does today. *See* R.C. 149.43(A)(1)(h); Sub.H.B. No. 448, 148 Ohio Laws, Part II, 3883, 3902-3903. And R.C. 149.43(A)(2)(a) has continuously provided that a record that pertains to a law-enforcement matter of a criminal, quasi-criminal, civil, or administrative nature is a confidential law-enforcement investigatory record "to the extent that the release of the record would create a high probability of disclosure of * * * [t]he identity of a suspect who has not been charged with the offense to which the record pertains." *See* 148 Ohio Laws, Part II, at 3902-3904.

{¶ 56} Ohio's Public Records Act is unambiguous. A law-enforcement record is not a public record if it reveals the identity of an uncharged suspect, and that remains true even when that information is contained within a routine incident report. Yet *Maurer* disregarded the words of R.C. 149.43 and created a blanket rule that all police incident reports are public records subject to release without redaction, regardless of whether their release would identify an uncharged suspect. That blanket rule cannot be squared with the plain language of the Public Records Act. Under the statute, if the release of an incident report reveals the identity of an

18

uncharged suspect, then the incident report is a confidential law-enforcement investigatory record and is not a public record until it is redacted.

{¶ 57} We have tried to walk back *Maurer*'s blanket rule. In *State ex rel. Beacon Journal Publishing Co. v. Akron*, this court said that *Maurer* did not adopt a per se rule that all police incident reports are subject to disclosure. 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 55, *superseded by statute on other grounds as stated in State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136. In *State ex rel. Myers v. Meyers*, we noted that information in an incident report could be redacted if a public-records exception applied to it, but we did not specifically question the viability of *Maurer*. *See* 169 Ohio St.3d 536, 2022-Ohio-1915, 207 N.E.3d 579, ¶ 46. And in *State ex rel. Sultaana v. Mansfield Corr. Inst.*, this court repeated the language from *Akron* indicating that *Maurer* did not create a per se rule and similarly stated that the names of uncharged suspects in an incident report could be exempt from disclosure. __ Ohio St.3d __, 2023-Ohio-1177, __ N.E.3d __, ¶ 29. None of these cases, however, expressly overruled *Maurer*, and parties continue to rely on it. Notably, neither of the two major legal-research databases, LexisNexis and Westlaw, show that *Maurer* has been overruled.

{¶ 58} Our decisions therefore have not gone far enough to disavow the holding in *Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511. *Maurer* does not accurately state the law in Ohio on this issue, and it must be overruled in part. And I read the majority opinion's statements describing *Maurer*'s holding as "no longer good law," majority opinion, ¶ 17, and "vitiate[d]," *id.* at ¶ 36, to mean that this court overrules this aspect of *Maurer*.

{¶ 59} Today's decision does not, however, undermine our holding in *State ex rel. Steckman v. Jackson* (and its progeny) that routine incident reports that do not contain information exempted from release by the Public Records Act are public records subject to immediate release. 70 Ohio St.3d 420, 435, 639 N.E.2d

83 (1994), *overruled on other grounds by State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 47.  Instead, today's decision simply recognizes the rule that "if a law-enforcement agency maintains routine factual information and [information that is exempt from release under R.C. 149.43(A)(2)] in the same overall record, then the records custodian may disclose the incident-report form after redacting any information that is considered to be [exempt]." *Myers* at ¶ 107 (Kennedy, J., concurring in part and dissenting in part).

{¶ 60} For these reasons, I concur in the majority opinion in this case.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

_____

Speech Law, L.L.C., and Brian D. Bardwell, for relator.

Walter Haverfield, L.L.P., R. Todd Hunt, and Alejandro V. Cortes, for respondents.

_____