[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mauk v. Sheldon*, Slip Opinion No. 2025-Ohio-1221.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-1221

THE STATE EX REL. MAUK *v.* SHELDON, SHERIFF, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mauk v. Sheldon*, Slip Opinion No. 2025-Ohio-1221.]**

*Mandamus—Public Records Act—R.C. 149.43—Relator failed to show by clear and convincing evidence that sheriff did not produce public records responsive to request No. 3—Sheriff failed to produce evidence to determine whether the information redacted from sheriff's responses to request Nos. 6, 10, and 11 is exempt from disclosure—Writ denied in part and held in abeyance in part as to sheriff, and sheriff ordered to file under seal for in camera inspection unredacted copies of sheriff's responses to request Nos. 6, 10, and 11—Because Ohio Department of Public Safety produced all records responsive to request No. 13, request for writ against department and its director is moot—Department produced all records responsive to request No. 13 within reasonable period and did not act in bad faith—Writ and requests for statutory damages, attorney fees, and court costs denied*

*as to department and its director.*

(No. 2023-1300—Submitted January 7, 2025—Decided April 9, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred in judgment only. KENNEDY, C.J., concurred in part and dissented in part, with an opinion.

**Per Curiam.**

{¶ 1} This is an original action in mandamus brought under Ohio's Public Records Act, R.C. 149.43, by relator, Andrea Mauk, against respondents, the Richland County Sheriff's Office and Sheriff Steve Sheldon (collectively, "the sheriff") and the Ohio Department of Public Safety and its director, Andy Wilson (collectively, "ODPS").[1] In addition to seeking a writ of mandamus compelling the release of public records, Mauk requests awards of statutory damages, attorney fees, and court costs and has filed a combined "motion to compel and motion for sanctions" against the sheriff.

{¶ 2} As to the sheriff, we deny Mauk's combined "motion to compel and motion for sanctions" and deny in part Mauk's request for a writ of mandamus. We order the sheriff to file under seal within 14 days for in camera inspection certain unredacted records and hold in abeyance our decision on Mauk's other requests for relief against the sheriff. As to ODPS, we deny Mauk's request for a writ of mandamus and all other requests for relief.

_____

1. The Mifflin Township Fire Department and its fire chief, David Markel (collectively, "Mifflin Fire"), were also named as respondents. Mauk settled her claims against Mifflin Fire, and we granted her application to dismiss Mifflin Fire from this action, 2024-Ohio-50.

## I. BACKGROUND

**{¶ 3}** According to Mauk, in June 2023, members of the Richland County Sheriff's Office, the Mifflin Township Fire Department, and the Ohio State Highway Patrol responded to an automobile accident in Richland County that claimed the life of Mauk's son, Damon. Mauk alleges that a sheriff's deputy found in Damon's vehicle Damon's iPhone and wallet, which contained approximately $1,500 in cash, and that the deputy took those effects to the hospital and gave them to a man who had presented himself as Damon's father. Mauk claims that Damon's father was largely absent from Damon's life and that neither Mauk nor law enforcement had notified him of Damon's death. Mauk states that she has been trying to recover Damon's property, confirm whether it was given to Damon's father, and "lobby the sheriff's office to tighten up its policies and ensure strangers cannot steal the property of accident victims."

**{¶ 4}** From July through October 2023, Mauk requested multiple public records from the sheriff and ODPS. As explained herein, request Nos. 1 through 11 were submitted to the sheriff and request Nos. 12 through 20 were submitted to ODPS. The specific requests at issue are request Nos. 3, 6, 10, 11, and 13.

**{¶ 5}** Mauk filed this original action on October 13, 2023. She filed an amended complaint on April 29, 2024. Mauk alleges that the sheriff and ODPS have committed multiple violations of the Public Records Act and asks us to issue a writ of mandamus directing them to produce the requested public records promptly and without improper redactions. She also seeks awards of statutory damages, attorney fees, and court costs.

**{¶ 6}** We ordered the sheriff and ODPS to answer Mauk's amended complaint, issued an alternative writ, and set a schedule for the presentation of evidence and filing of briefs. 2024-Ohio-4534. The sheriff and ODPS have submitted sworn affidavits and copies of correspondence to and from Mauk. Mauk appended to her amended complaint sworn affidavits averring the truth of the

allegations therein and attached copies of correspondence between herself and the sheriff or ODPS; she has not presented other evidence.

## II. MOTIONS

{¶ 7} Mauk served discovery requests on the sheriff on January 18, 2024, while this matter was under a mediation stay, *see* 2023-Ohio-3847. We returned this matter to the regular docket on February 13. 2024-Ohio-523. On March 27, the sheriff filed a motion to stay discovery pending this court's ruling on a motion to dismiss that had not yet been filed. The sheriff subsequently filed a motion to dismiss the complaint and, after Mauk filed an amended complaint, a motion to dismiss the amended complaint. Mauk opposed the sheriff's motion to stay discovery and motion to dismiss the amended complaint. On September 18, we denied the motion to dismiss the amended complaint and denied as moot the motion to stay discovery. 2024-Ohio-4534.

{¶ 8} On September 30, Mauk filed a combined "motion to compel and motion for sanctions" against the sheriff, stating that the sheriff has refused to respond to her interrogatories, requests for inspection, and requests for admissions. She therefore asks that we order the sheriff to produce all documents responsive to her discovery requests. However, on October 8, the sheriff timely filed evidence and simultaneously responded to Mauk's discovery requests. Mauk does not claim that she has not received the sheriff's discovery responses. We therefore deny as moot Mauk's motion to compel against the sheriff. *See State ex rel. Fluty v. Raiff*, 2023-Ohio-3285, ¶ 8, 11.

{¶ 9} Mauk additionally asks that we impose sanctions against the sheriff for refusing to respond to her discovery requests. Specifically, Mauk asks that we issue an order under Civ.R. 37(D) establishing certain facts alleged in her amended complaint and discovery requests and directing the sheriff to pay her attorney fees. Assuming without deciding that these types of discovery requests are proper in mandamus actions originating in this court, *see* S.Ct.Prac.R. 12.06(A), Mauk fails

to prove that the sheriff's delay in responding to her discovery requests warrants the imposition of these sanctions. Accordingly, we deny Mauk's motion for sanctions against the sheriff.

## III. ANALYSIS

### A. Mandamus Standard

{¶ 10} R.C. 149.43(B)(1) establishes that any person has a clear legal right to request identifiable public records be made available for inspection or copying and imposes on public offices and persons responsible for public records a corresponding clear legal duty to make a requested public record available for inspection or copying. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 25. "Public record" means any record that is kept by a public office unless it falls squarely within a specific statutory exemption. R.C. 149.43(A)(1).

{¶ 11} Mandamus is an appropriate remedy to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b). The requester's burden of production is to plead and prove facts showing that she requested a public record under R.C. 149.43(B)(1) and that the public office or person responsible for public records did not make the record available. *Welsh-Huggins* at ¶ 26. The requester's burden of persuasion is to establish entitlement to the extraordinary writ by clear and convincing evidence. *Id.*

### B. Mauk's Mandamus Claims Against the Sheriff

#### 1. Civ.R. 36 Requests for Admissions

{¶ 12} On January 18, 2024, Mauk served the sheriff with requests for admissions, designating a period of 28 days for the sheriff to respond. The sheriff did not answer the requests until October 8, the same day that the sheriff filed evidence in accordance with this court's alternative writ. Mauk contends that the sheriff's failure to answer the requests within 28 days resulted in conclusive admissions of facts that are dispositive of her mandamus claim and that the sheriff has not made the required motion to withdraw or amend the admissions. Specifically,

Mauk asserts that the sheriff has admitted that (1) all the allegations in the amended complaint are true, (2) the sheriff is in possession of responsive public records that have not yet been produced to Mauk, and (3) the sheriff has acted in bad faith in failing to produce responsive public records.

{¶ 13} "Civ.R. 36 requires that when requests for admissions are filed by a party, the opposing party must timely respond either by objection or answer. Failure to respond at all to the requests will result in the requests becoming admissions." *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67 (1985). "Any matter admitted under Civ.R. 36 is conclusively established unless the court on motion permits withdrawal or amendment of the admission." *Id*., citing Civ.R. 36(B). However, Civ.R. 36(B) does not require that a written motion be filed, nor does it specify when such motion must be filed. *Balson v. Dodds*, 62 Ohio St.2d 287, 290, fn. 2 (1980). Instead, the rule leaves such matters to the court's discretion. *Id.*; *see also Cleveland Trust Co.* at 67 ("Under compelling circumstances, the court may allow untimely replies to avoid the admissions."). In *Balson*, we noted that the trial court could have reasonably found that a party satisfied the Civ.R. 36(B) requirement simply by contesting the truth of the Civ.R. 36(A) admissions for summary-judgment purposes. *Balson* at 290, fn. 2.

{¶ 14} Under Civ.R. 36(B), a court may permit withdrawal or amendment of the admissions when (1) doing so will aid in presenting the merits of the case and (2) the party who obtained the admissions fails to prove that withdrawal or amendment will prejudice her in maintaining the action or defense on the merits. *See id.* at paragraph two of the syllabus. "This provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to [her] prejudice." *Cleveland Trust Co.* at 67; *see also Perotti v. Ferguson*, 7 Ohio St.3d 1, 3 (1983) (it is a "basic tenet of Ohio jurisprudence that cases should be decided on their merits").

6

{¶ 15} Here, the sheriff has satisfied the Civ.R. 36(B) requirement. Mauk served her discovery requests while this matter was referred to mediation and all filing deadlines had been stayed by the court. *See* 2023-Ohio-3847; 2024-Ohio-523. On multiple occasions, the parties purportedly corresponded about scheduling a meeting to confer regarding Mauk's discovery requests, but no meeting ever took place. And the sheriff answered the requests for admissions within a reasonable time following our September 18, 2024 order denying the sheriff's motion to dismiss and issuing an alternative writ. Moreover, withdrawal or amendment of the admissions will clearly aid in presenting the merits of the case, and Mauk does not argue, let alone demonstrate, that doing so will prejudice her ability to maintain the action.

{¶ 16} We conclude that the sheriff's failure to respond to Mauk's requests for admissions within 28 days of service has not resulted in the conclusive admissions of facts.

### 2. Mauk's Public-Records Requests to the Sheriff

#### a. Request Nos. 1, 2, and 3

{¶ 17} Mauk claims that on July 10, 2023, she hand-delivered a written request for records to the sheriff, seeking access to all reports related to Damon's accident ("request No. 1"). Mauk also alleges that she orally requested a copy of the inventory of property recovered from Damon's vehicle ("request No. 2") and body-camera footage from the deputies who gave away Damon's property ("request No. 3"). Mauk does not contest the sheriff's responses to request Nos. 1 and 2. She contends, however, that the sheriff has not produced any records in response to request No. 3, "though [the sheriff] admit[s] those records exist."

{¶ 18} The sheriff has submitted the affidavit of Captain James P. Sweat, who oversees the records and public-records requests as captain of the support bureau within the sheriff's office. Captain Sweat avers that "[t]here was no body-worn camera footage available from the hospital" and that "[w]hile body-worn

camera footage was recorded and uploaded from officers assisting at the crash scene, Ms. Mauk never specifically requested [that] footage."

### b.  Request Nos. 4 and 5

**{¶ 19}** On August 1, 2023, Mauk electronically submitted a request for records directly to Sheriff Sheldon, seeking access to the sheriff's office's policies under R.C. 4501.80 for notifying a victim's next of kin following a fatal motor-vehicle accident ("request No. 4") and the sheriff's office's policies for handling recovered property ("request No. 5").  Although the parties dispute whether Sheriff Sheldon ever replied to Mauk's email, Captain Sweat avers that the sheriff's office's records department never received these requests and that "no attempted follow-up was made to inform [the sheriff] that Ms. Mauk was still awaiting any responsive records."

**{¶ 20}** It is uncontested that responsive documents to request Nos. 4 and 5 were provided to Mauk on November 10, 2023—almost one month after Mauk initiated this mandamus action.

### c.  Request Nos. 6, 7, 8, and 9

**{¶ 21}** On September 21, 2023, Mauk's counsel electronically submitted a request for records directly to Sheriff Sheldon, seeking access to all public-records requests the sheriff received from September 1 through 14, 2023 ("request No. 6"), the sheriff's office's log of public-records requests ("request No. 7"), the sheriff's office's policy for complying with public-records requests ("request No. 8"), and the sheriff's office's records-retention schedule ("request No. 9").

**{¶ 22}** Mauk concedes that the sheriff produced records responsive to request Nos. 8 and 9.  And she does not contest that there is no responsive record to request No. 7.

**{¶ 23}** As to request No. 6, the sheriff produced a set of redacted public-records requests and an explanation for the redactions.  Mauk disputed the explanation given for the redactions, and the sheriff responded by email on October

13, 2023. Whereas Mauk alleges that this email "offered entirely new justifications for the[] redactions," the sheriff asserts that the email offered clarification and corrected a "minor citation mistake."

### d. Request Nos. 10 and 11

{¶ 24} On October 2, 2023, Mauk's counsel electronically submitted a request for records directly to Sheriff Sheldon, seeking access to all public-records requests the sheriff received from July 1 through 14, 2023 ("request No. 10") and from August 1 through 14, 2023 ("request No. 11"). The sheriff produced a set of redacted public-records requests and an explanation for the redactions on October 20, 2023—seven days after Mauk initiated this mandamus action.

### 3. Whether Mauk Is Entitled to a Writ for Request No. 3

{¶ 25} Mauk contends that she is entitled to a writ of mandamus compelling the sheriff to produce body-camera footage in response to request No. 3. Mauk alleged in her amended complaint that she requested "footage from the body-worn cameras of the deputies who gave away Damon's property" and that the sheriff did not provide the requested records. Captain Sweat avers that Mauk requested "body-worn camera footage from the hospital when Damon's property was given to his father" but that there is no such footage. Captain Sweat further avers, "While body-worn camera footage was recorded and uploaded from officers assisting at the crash scene, Ms. Mauk never specifically requested [that] footage."

{¶ 26} In her merit brief, Mauk contends that she requested "body-camera footage from the deputies who responded to her son's crash." However, Mauk has failed to rebut Captain Sweat's affidavit with clear and convincing evidence that she orally requested body-camera footage from the scene of the accident as opposed to footage from the hospital when Damon's property was allegedly given to his father. Thus, Mauk has not shown that the sheriff failed to provide a record she requested. *See State ex rel. Griffin v. Doe*, 2021-Ohio-3626, ¶ 6 (relator in public-records mandamus action must prove that relator requested a public record and that the public

office did not make the record available in response to the request). Therefore, Mauk is not entitled to a writ of mandamus based on her claim that the sheriff failed to produce responsive public records to request No. 3.

*4. Whether Mauk Is Entitled to a Writ for Request Nos. 6, 10, and 11*

{¶ 27} Mauk contends that she is entitled to a writ of mandamus compelling the sheriff to produce unredacted responses to request Nos. 6, 10, and 11, in which she requested access to all public-records requests the sheriff received during three separate time periods.

{¶ 28} "A redaction shall be deemed a denial of a request to inspect or copy the redacted information, except if federal or state law authorizes or requires a public office to make the redaction." R.C. 149.43(B)(1). R.C. 149.43(A)(1) excludes certain information from the definition of a public record, some of which is prohibited from release to the public by law. *State ex rel. Shaughnessy v. Cleveland*, 2016-Ohio-8447, ¶ 12. The public office bears the burden of proving that the requested records fall squarely within an exception. *See State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus.

{¶ 29} Here, the sheriff asserts that the redacted information is exempt from disclosure as (1) "personal information" in the form of Social Security numbers under R.C. 149.43(A)(1)(dd) and 149.45(A)(1), (2) victims' telephone numbers under R.C. 149.43(A)(1)(mm), and (3) "confidential law enforcement investigatory records" under R.C. 149.43(A)(1)(h) and (A)(2)(d). The sheriff also claims that "personal notes" were redacted, and the sheriff, in support of those redactions, cites *State ex rel. Steffen v. Kraft*, 67 Ohio St.3d 439, 441 (1993) (holding that trial judge's personal, handwritten notes made during the course of trial were not public records under R.C. 149.43(A)(1)), and *State ex rel. Cranford v. Cleveland*, 2004-Ohio-4884, ¶ 21 (holding that public official's personal notes were not public records subject to disclosure under R.C. 149.43). Apart from the apparent redactions of Social Security numbers, Mauk challenges each of the sheriff's asserted exemptions.

**{¶ 30}** It is well settled that "[w]hen a governmental body asserts that public records are excepted from disclosure and such assertion is challenged, the court must make an individualized scrutiny of the records in question." *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79 (1988), paragraph four of the syllabus. "If the court finds that these records contain excepted information, this information must be redacted and any remaining information must be released." *Id*.

**{¶ 31}** Mauk argues that the sheriff has produced no evidence on which we can rely to determine whether the redacted information is exempt from disclosure. We agree. First, the applicability of the asserted exemptions is not apparent from the records themselves, and the sheriff did not file a motion for leave to submit copies of the unredacted records for in camera review, like the sheriff's office did in *State ex rel. Mack v. Richland Cty. Sheriff's Office*, 2024-Ohio-2748, ¶ 9. Second, Captain Sweat avers that "[a]ll requested documents were . . . reviewed for any applicable exemptions or necessary redactions," but he does not state which specific exemptions apply. Third, the letters in evidence that counsel for the sheriff sent to Mauk when responding to request Nos. 6, 10, and 11 contain unsworn statements and do not support denial of the writ. *See, e.g.*, *id.* at ¶ 17 (disregarding the unsworn representation of the respondent's counsel).

**{¶ 32}** Accordingly, we order the sheriff to file under seal within 14 days for in camera inspection unredacted copies of the responses to request Nos. 6, 10, and 11, *see, e.g.*, *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 541-542 (2000), and we hold in abeyance our decision on Mauk's requests for awards of statutory damages, attorney fees, and court costs against the sheriff.

### C. Mauk's Mandamus Claims Against ODPS

**{¶ 33}** On July 18, 2023, Mauk submitted an electronic request for records to ODPS, seeking access to several categories of records related to her son's accident, including "photos" ("request No. 12"), "body cams" ("request No. 13"), "reports" ("request No. 14"), "communications to the OhioHealth hospital

(Mansfield)" ("request No. 15"), "everything you have on file for this case" ("request No. 16"), the "policy on turning off body cams during an investigation" ("request No. 17"), information on "who makes the determination for med flights" ("request No. 18"), the sheriff's office's policies on releasing personal property and "cooperat[ing] with EMS and Ohio State Patrol" ("request No. 19"), and "all documentation from the EMS and fire department that were called to the scene for the crash" ("request No. 20").

{¶ 34} Mauk concedes that ODPS produced records responsive to request Nos. 12, 14, and 17. And she is not seeking to enforce any further compliance with request Nos. 15, 16, 18, 19, and 20. Therefore, the only request that remains at issue is request No. 13 for body-camera footage.

{¶ 35} ODPS has submitted the affidavit of Nia Jones, who is employed by ODPS as a customer-service assistant in the central-records audio/video-redactions unit. According to Jones, her unit receives a significant number of public-records requests for audio and video recordings and 1,422 requests were pending as of the date of her affidavit.

{¶ 36} Jones avers that Mauk's request for records was made through the public-portal "GovQA" system, which is the program ODPS uses to manage and track public-records requests, and that ODPS acknowledged receipt of the request that same day. On July 21, 2023, ODPS downloaded the footage that Mauk had requested. On September 15, ODPS sent Mauk messages through the GovQA system providing a link to access crash reports and photographs and advising Mauk that (1) the requested footage had been sent for review and redaction, (2) ODPS had "an extensive backlog and requests are processed in the order they are received," (3) ODPS's crash-reconstruction section was not involved in the accident investigation and therefore no crash-reconstruction files had been generated, and (4) she needed to contact Richland County for the Richland County records she had requested. On November 16, four months after ODPS received Mauk's request, another customer-

12

service assistant for ODPS sent Mauk an email with a link through which she could download the redacted body-camera footage and a document that listed the applicable disclosure exemptions. The footage provided to Mauk contained a total of 6 hours and 17 minutes of video from three body-worn cameras and one dashboard camera, as well as 25 minutes of audio.

**{¶ 37}** Because Mauk initiated this original action on October 13, 2023, and ODPS subsequently responded to her request No. 13, her mandamus claim against ODPS regarding that request is now moot. *See State ex rel. Payne v. Rose*, 2023-Ohio-3801, ¶ 8 (public-records mandamus claims generally become moot when the public office provides the requested records after the requester brings an action in mandamus), citing *State ex rel. Martin v. Greene*, 2019-Ohio-1827, ¶ 7; *see also State ex rel. Gaylor, Inc. v. Goodenow*, 2010-Ohio-1844, ¶ 10 (mootness doctrine applies when an event occurs after the action is commenced that renders it impossible for a court to grant relief).

**{¶ 38}** Mauk nevertheless contends that she is entitled to a writ of mandamus compelling ODPS to comply with the obligation to organize and maintain public records in such a manner that they may be made available for inspection or copying within a reasonable period. *See* R.C. 149.43(B)(1) and (2). Although Mauk alleged in her amended complaint that ODPS violated R.C. 149.43(B)(2), she did not specifically request in her prayer for relief that this court compel ODPS to comply with R.C. 149.43(B)(2). *See State ex rel. Gilreath v. Cuyahoga Job & Family Servs.*, 2024-Ohio-103, ¶ 31, quoting S.Ct.Prac.R. 12.02(B)(3) ("'All relief sought [in an original action] shall be set forth in the complaint.'" [Bracketed text in original.]). Regardless, any such request must fail because a violation of R.C. 149.43(B)(2) is actionable only when it *prevents* the public office from producing a public record, *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2023-Ohio-3382, ¶ 41, which is not the case here. Accordingly, Mauk is not entitled to a writ of mandamus compelling any action from ODPS.

### D. Other Requested Relief Against ODPS

*1. Statutory Damages*

**{¶ 39}** Even when a public-records mandamus action is mooted by the production of records, a requester may still be entitled to statutory damages under R.C. 149.43(C)(2). *State ex rel. Suggs v. McConahay*, 2022-Ohio-2147, ¶ 9. A requester shall be entitled to statutory damages if (1) she transmitted her request by hand delivery, electronic submission, or certified mail, (2) her request was transmitted to the public office or person responsible for the public records, (3) she fairly described the public records being sought, and (4) the public office or person responsible for public records failed to comply with an obligation under R.C. 149.43(B). R.C. 149.43(C)(2). The requester must prove these elements by clear and convincing evidence. *State ex rel. Mobley v. Toledo*, 2022-Ohio-3889, ¶ 11. The amount of damages is fixed at $100 for each business day, beginning with the day on which the requester filed the mandamus action, up to a maximum of $1,000. R.C. 149.43(C)(2).

**{¶ 40}** Mauk maintains that she is entitled to $1,000 in statutory damages from ODPS because ODPS failed to comply with the obligations that are set forth in R.C. 149.43(B)(2). R.C. 149.43(B)(2) requires a public office or person responsible for public records to "organize and maintain public records in a manner that they can be made available for inspection or copying" in accordance with R.C. 149.43(B). R.C. 149.43(B)(1) requires a public office or person responsible for public records to "make copies of the requested public record available to the requester at cost and within a reasonable period of time." "What constitutes a reasonable period of time 'depends upon all of the pertinent facts and circumstances,' including the scope of a public-records request, the volume of responsive records, and whether redactions are necessary." *State ex rel. Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2024-Ohio-5063, ¶ 32, quoting *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 10. "For example, in a case in which a large number of murder-investigation documents

14

needed to be carefully redacted and the public office had provided initial responses, [this court] concluded that two months was a reasonable amount of time." *Id.*, citing *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, ¶ 3-5, 59.

{¶ 41} Here, four months passed between when Mauk requested body-camera footage and ODPS produced the redacted footage. During that time, ODPS communicated with Mauk about the progress of the review of the footage and the reasons for the delayed response. Considering the nature of the request, the quantity of responsive footage, and the necessity for a thorough review of the footage to make any required redactions, we conclude that the redacted body-camera footage was produced within a reasonable period. As such, Mauk has not met her burden to show by clear and convincing evidence that she is entitled to statutory damages.

### 2. Attorney Fees

{¶ 42} Because Mauk is not entitled to a writ compelling ODPS to comply with the Public Records Act, her contention that she is entitled to attorney fees under R.C. 149.43(C)(3)(b) must fail. Mauk also argues that she is entitled to attorney fees because ODPS "acted in bad faith" by voluntarily making the body-camera footage available to her for the first time after she commenced this mandamus action but before we issued an order determining whether ODPS was required to comply with R.C. 149.43(B). *See* R.C. 149.43(C)(3)(b)(iii).

{¶ 43} We have said:

> The term "bad faith" generally implies something more than bad judgment or negligence. Bad faith imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

(Cleaned up.) *State ex rel. McDougald v. Greene*, 2020-Ohio-3686, ¶ 26.

**{¶ 44}** The record does not show that ODPS tried to mislead or deceive Mauk about the reasons for the delay in producing the body-camera footage, nor does the record show a dishonest purpose by ODPS in placing Mauk's request at the end of "an extensive backlog" of other requests. Rather, the record establishes that ODPS was obligated to review the footage for the purpose of making redactions required by law and that ODPS conveyed this information to Mauk. We therefore conclude that ODPS did not act in bad faith, and we deny Mauk's request for an award of attorney fees.

### 3. Court Costs

**{¶ 45}** We also deny Mauk's request for an award of court costs. Under R.C. 149.43(C)(3)(a), an award of court costs is contingent on a court's ordering the respondent to comply with R.C. 149.43(B) or a showing of bad faith on the part of the respondent. Because Mauk is not entitled to a writ compelling ODPS to comply with the Public Records Act and there is no evidence of ODPS having acted in bad faith, Mauk is not entitled to court costs.

### IV. CONCLUSION

**{¶ 46}** For the foregoing reasons, as to the sheriff, we deny Mauk's combined "motion to compel and motion for sanctions" and Mauk's request for a writ of mandamus regarding request No. 3. We order the sheriff to file under seal within 14 days for in camera inspection unredacted copies of the responses to requests Nos. 6, 10, and 11 and hold in abeyance our decision on Mauk's other requests for relief against the sheriff. As to ODPS, we deny Mauk's request for a writ of mandamus and all other requests for relief.

Writ denied in part
and held in abeyance in part.

————————————

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 47} I concur in the court's judgment, with one exception. I disagree with the majority's decision to deny relator, Andrea Mauk, an award of statutory damages for the public-records request she sent to respondent the Ohio Department of Public Safety ("ODPS"). (Mauk also named ODPS Director Andy Wilson and the Richland County Sheriff's Office and Sheriff Steve Sheldon as respondents in this action.) I would award Mauk statutory damages in the amount of $1,000. Therefore, I concur in part and dissent in part.

{¶ 48} On July 18, 2023, after her son's fatal car crash on June 24, 2023, Mauk submitted a public-records request to ODPS, seeking the production of photos, body-camera footage, reports, communications to the OhioHealth hospital in Mansfield, and other files related to her son's accident. She also sought ODPS's policy about turning off body cameras during an investigation, records containing information about who at ODPS makes medical-flight determinations, certain policies of the Richland County Sheriff's Office, and records from the EMS and fire department that responded to the crash. Except for the body-camera footage and the policies of the sheriff's office, ODPS produced records responsive to Mauk's request on September 15. On that date, Mauk was also informed that she would receive a notification when the requested body-camera footage was available for release. Almost one month later, on October 13, Mauk commenced this writ action. The redacted body-camera footage was released on November 16.

{¶ 49} ODPS claims that this four-month response time for producing the body-camera footage was reasonable. And the majority agrees. *See* majority opinion, ¶ 41. In support of its assertion, ODPS provided an affidavit from Nia Jones—a customer-service assistant in ODPS's central-records audio/video-redactions unit ("redactions unit"). The redactions unit was tasked with reviewing and redacting the body-camera footage and then providing that footage to Mauk. Jones avers that the redactions unit "typically [has] around 1,400 requests" for

audio and video records pending at any given time. Based on that averment, ODPS provided the following hypothetical in its merit brief: if each public-records request involves five hours of footage, then the amount of footage requiring review at any time amounts to 7,000 hours. But this hypothetical is just that—a hypothetical. ODPS has not provided any evidence of the average length of time it takes the redactions unit to process public-records requests or the average amount of footage that must be reviewed for each request. Nor has ODPS presented any evidence of how many employees in the redactions unit work on responding to these types of requests.

{¶ 50} As evidence, ODPS has provided the audit log from the "GovQA" system for Mauk's request; GovQA is the program ODPS uses when responding to public-records requests. The audit log shows every activity performed in the system for a particular request, who performed it, and when. And in this case, the audit log and Jones's affidavit indicate that the body-camera footage was downloaded by an ODPS staff member on July 21, 2023. However, it appears from the evidence that it was not until September 15 that the requested body-camera footage was actually sent to the redactions unit for review. The audit log also does not indicate how much time ODPS staff members spent preparing the footage for release to Mauk during the two-month period between September 15 and November 16.

{¶ 51} Further, Jones states in her affidavit that the redactions unit uses the Evidence.com digital system to review and redact audio and video files. But ODPS has not provided the audit log from the Evidence.com system as evidence, even though the Ohio State Highway Patrol's policy OSP-103.22, revision No. 16— which was provided as evidence by ODPS—indicates that the Evidence.com system keeps an "audit trail" documenting access to and actions performed in the system regarding particular audio and video files. Because the Evidence.com audit log was not provided as evidence by ODPS, I would infer that the contents of the

Evidence.com audit log show that ODPS did not timely review and redact the requested body-camera footage. *See Nation-Wide Check Corp., Inc. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 217 (1st Cir. 1982) ("When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him."). The GovQA audit log alone does not support ODPS's claim that its response time was reasonable.

**{¶ 52}** Moreover, the fact that a public office receives a large volume of public-records requests, standing alone, does not relieve it of the duty to respond to each request *within a reasonable period of time*. *See* R.C. 149.43(B)(1). "'No pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of the public records within a reasonable time.'" *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 36, quoting *State ex rel. Beacon Journal Publishing Co. v. Andrews*, 48 Ohio St.2d 283, 289 (1979). Here, ODPS's claim that 1,400 pending audio and video requests equates to 7,000 hours of footage requiring review is not supported by anything more than a hypothetical number of hours of footage requiring review for each pending public-records request. And this "typical" number of pending requests also does not reflect how many requests the redactions unit *actually* had pending when it received Mauk's request. Therefore, ODPS has not provided sufficient evidence to prove that the four months it took ODPS to respond to Mauk's public-records request for the body-camera footage was reasonable under R.C. 149.43(B)(1). *See also Black's Law Dictionary* (12th Ed. 2024) ("reasonable" means "[r]eflecting good judgment; fair and proper under the circumstances; rational, sound, and sensible").

**{¶ 53}** The caselaw cited by ODPS does not support the four-month response time either. In *State ex rel. Cincinnati Enquirer v. Deters*, this court concluded that six business days constituted a reasonable response time to a public-records request for body-camera footage, given that the respondent was entitled to review the footage to determine whether any redactions were necessary before producing the requested record. 2016-Ohio-8195, ¶ 23-25. In *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, this court concluded that two months constituted a reasonable response time to a request for final autopsy reports, given the "magnitude of the investigation" and the respondent's "corresponding need to redact the reports with care." 2017-Ohio-8988, ¶ 59. And in *State ex rel. Patituce & Assocs., L.L.C. v. Cleveland*, the Eight District Court of Appeals determined that a period of almost three months constituted a reasonable response time to a request for personnel files of police officers, given the voluminous nature of the requested records that had to be reviewed for any necessary redactions. 2017-Ohio-300, ¶ 2, 7-10 (8th Dist.).

**{¶ 54}** In *Deters*, *Pike Cty. Coroner's Office*, and *Patituce & Assocs.*, each of the respondents needed time to review voluminous records to complete required redactions. And in each of those cases, the respondents did so in less than the four-month period it took ODPS to do the same thing in this case. Accordingly, none of those cases justify the four-month response time here. Further, ODPS does not point to any case in which this court has concluded that a four-month response time constituted a reasonable response time for a public office to produce records requested under the Public Records Act. This case should not change that.

**{¶ 55}** For the foregoing reasons, I would conclude that ODPS's response time for producing the redacted body-camera footage was unreasonable. I therefore concur in part and dissent in part and would award Mauk statutory damages in the amount of $1,000 pursuant to R.C. 149.43(C)(2).

———————————

Speech Law, L.L.C., and Brian D. Bardwell, for relator.

Fishel Downey Albrecht & Riepenhoff, L.L.C., David C. Moser, and Makenzie E. McAfee, for respondents Steve Sheldon and Richland County Sheriff's Office.

Dave Yost, Attorney General, and Ann Yackshaw and Heather L. Buchanan, Assistant Attorneys General, for respondents Andy Wilson and Ohio Department of Public Safety.

_____