**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Harris v. Starcher*, Slip Opinion No. 2026-Ohio-1089.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1089

THE STATE EX REL. HARRIS *v.* STARCHER ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Harris v. Starcher*, Slip Opinion No. 2026-Ohio-1089.]**

*Mandamus—Public-records requests—Relator is not entitled to writ for public records that he has already been provided or that no longer exist—Relator is entitled to statutory damages because respondents failed to produce requested records within reasonable time—Writ denied, relator awarded $2,000 in statutory damages, and relator's request for costs denied.*

(No. 2024-1428—Submitted May 13, 2025—Decided March 31, 2026.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.  KENNEDY, C.J., concurred in part and dissented in part, with an opinion.  FISCHER, J., concurred in part and dissented in part and would not award any statutory damages.  DEWINE, J., concurred in part and dissented in part and

would not award statutory damages as to the third public-records request.

**Per Curiam.**

{¶ 1} Relator, Lionel Harris, filed this original action in mandamus against respondents, Darrick Starcher and Richard McCurry, employees of North Central Correctional Complex,[1] where Harris is incarcerated. Harris seeks (1) a writ of mandamus ordering respondents to provide him with the three sets of public records he requested and (2) statutory damages, court costs, and miscellaneous costs. Harris also filed motions to allow computer-forensic analysis, for leave to file rebuttal evidence, and for sanctions for alleged spoliation of the evidence.

{¶ 2} We deny the writ. Because NCCC produced most of the requested records, albeit after Harris filed his mandamus action, the mandamus claim for the produced records is moot. Mandamus will not lie for the remaining record, one day of security video, because NCCC failed to retain it and it no longer exists. We award statutory damages of $2,000 for NCCC's failure to timely produce records responsive to two of the three requests. Finally, we deny Harris's three motions and his demand for costs.

## I. BACKGROUND

### A. Public-Records Requests and Responses

{¶ 3} Harris sent three public-records requests via electronic kite to NCCC in August and September 2024. First, on August 28, he requested "video footage of the NCCC library" for August 26 and 27, 2024. The next day, he repeated his request and sought a "litigation hold" on the requested video. Second, on August 30, he requested video footage of the NCCC library for August 30, 2024,

---

1. Respondents are employees of Management & Training Corporation ("MTC"), which operates the North Central Correctional Complex under contract with the Ohio Department of Rehabilitation and Correction ("ODRC"). In this opinion, we refer to the respondents individually by name and collectively as "NCCC."

identifying the request as a "[l]itigation hold letter & public records request." Third, on September 19, he requested copies of kites that memorialized the records requests and grievances that he had filed with NCCC.

{¶ 4} On August 30, in response to the first request, Starcher stated that the requested video footage would be retained. NCCC policy provides that when an inmate requests video data from a fixed camera location, the video is retrieved and sent to NCCC's counsel so that the responsive nonexempt and nonprivileged portions can be produced in a format viewable by the inmate on an MTC computer with his or her case manager.

{¶ 5} On September 3, 2024, following a series of messages with NCCC staff, Harris sent a "litigation hold" letter regarding the video to NCCC's counsel. Counsel replied on September 20, asserting that the requested video had been preserved and offering to send Harris redacted videos that included footage recorded only during the NCCC library's business hours. Harris alleges that he replied to this letter on September 27, insisting that he be given unredacted video and warning that he would file a mandamus action if he did not receive all the requested records within ten days. Counsel attests that he never received this letter.

{¶ 6} On September 29, McCurry replied further to Harris's first and second video requests, stating, "The footage has been preserved and forwarded to MTC lawyers[;] the next steps will be with them in determining when you receive them." However, McCurry did not respond to Harris's September 19 request for copies of kites and grievance records.

### B. Harris Files This Mandamus Action

{¶ 7} On October 10, 2024, Harris commenced this mandamus action against McCurry and Starcher, who had communicated with him about his public-records requests, alleging that NCCC had failed to timely provide the requested video and documents. His complaint seeks (1) a writ of mandamus ordering NCCC

SUPREME COURT OF OHIO

to produce the requested records and (2) awards of statutory damages, court costs, and miscellaneous costs. He attached an affidavit of indigence to the complaint.

### C. NCCC Produces Records and Files an Answer

{¶ 8} On October 15, after this action was filed, counsel for NCCC mailed to Harris a thumb drive containing what counsel believed to be the requested three days of security video. NCCC received the package from counsel containing the thumb drive on October 23 or 24. On October 27, Harris's case manager tried to schedule with Harris his viewing of the security video on an NCCC computer. Harris refused to view the video and insisted on possessing the thumb drive. However, inmates in Ohio prisons are prohibited under Adm.Code 5120-9-19(B)(3) from receiving or possessing items such as thumb drives and computer discs. Harris declined to view the video.

{¶ 9} On November 4, 2024, counsel replied to Harris's September 19 request for various kites and grievance records, advising that NCCC would provide him with paper copies of the requested records upon prepayment of the copy cost of $.05 a page. Counsel clarified that the September 19 request initially was not labeled a public-records request and that all the records he sought were available to him on his state-issued electronic tablet.

{¶ 10} That same day, NCCC filed an answer and moved for judgment on the pleadings, arguing that it had provided all the records responsive to Harris's requests and that the mandamus action should be dismissed as moot. We denied the motion, granted an alternative writ, and set a schedule for the submission of evidence and briefs. 2025-Ohio-156. Both parties filed evidence and briefs.

### D. Harris Receives the Requested Records and Files Various Motions

{¶ 11} Harris prepaid the copy costs for the requested kites and grievance records on November 13, 2024. On February 10, 2025, after submitting his evidence in this action, Harris viewed the three days of video that he had requested, but he asserted that the relevant portion had been deleted. Harris acknowledges

that he received all the documents he requested and viewed the video he requested (except for the allegedly deleted footage), but he contends that he never "received" the requested video because he was not permitted to have the thumb drive containing the video recordings.

{¶ 12} Harris thereafter filed a motion for an order allowing "computer forensic analysis" of the NCCC hard drive to retrieve the allegedly deleted video as well as a motion for sanctions against NCCC's counsel for spoliation for allegedly deleting the footage. He also moved for leave to file rebuttal evidence.

### E. NCCC Discovers That It Inadvertently Failed to Produce and Retain Video Responsive to Harris's Second Request

{¶ 13} During briefing on the motion for sanctions, NCCC discovered that it had provided video to Harris for an incorrect date. Specifically, in response to Harris's second request, which sought library security footage for August 30, NCCC inadvertently gave Harris video for September 30 instead. Counsel for NCCC explained that the video provided to him by NCCC was labeled "8-26-24," "8-27-24," and "8-30-24" but contained footage from August 26, August 27, and September 30—not August 30. McCurry, who provided the video, attested: "What I thought was August 30, 2024, video footage was actually video footage from September 30, 2024." Counsel was unaware of this error when he forwarded the requested video to Harris on October 15. Counsel later learned that the video for August 30 could not be retrieved. McCurry "was unable to retrieve the requested footage from August 30, 2024, because the DVR footage was out of range." He then "tried to work with MTC's internal IT team to find a solution" but "was unable to retrieve and extract the data for August 30, 2024, because it was beyond the retention period."

## II.  ANALYSIS

### A.  Motions

*1.  Relator's Motion for an Order Allowing Computer Forensic Analysis*

{¶ 14} Harris contends that some of the library security footage he sought from August 30, 2024, was deliberately deleted.  He moves for an order allowing forensic analysis of the hard drive on which NCCC stores its security video to retrieve the allegedly missing footage.

{¶ 15} As discussed above, after Harris filed his motion, NCCC discovered and disclosed that instead of producing the August 30 video that Harris requested, it inadvertently produced video for a different date.  Because of NCCC's mistake, the requested August 30 video was deleted and is not readily recoverable.  According to the affidavit of an NCCC information-technology ("IT") officer, cameras within the facility continually record and upload video data onto a local DVR, which is interconnected with a hard drive connected to NCCC's network.  Consistent with ODRC policy, the prison's video system retains surveillance video footage for 45 days.  The IT officer attested, "Once that 45-day period has lapsed, the video is recorded over, and the old footage is not retained."  He also attested that video footage from August 2024 would have been recorded over at least four times.  He concluded that "even by the most sophisticated search means . . . it is highly unlikely that any data would be recovered."

{¶ 16} Deleted computer files that are still recoverable do not lose their status as public records, and a writ of mandamus may issue to compel a respondent to recover those files.  *See State ex. rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 28, 41.  But records that are beyond digital recovery do not exist and cannot be obtained by mandamus.  *Id*. at ¶ 27-28.  In *Toledo Blade*, this court considered a request for a writ of mandamus to compel a public office to recover emails that had been unlawfully deleted in violation of a records-retention policy.  *Id*. at ¶ 19.  The requester introduced evidence establishing that the deleted

emails were recoverable "because the data remains on the hard drive until the space where the data exist is overwritten by new data," evidence the public office did not contradict. *Id*. at ¶ 28. Because the deleted emails were shown to still exist on the public office's computer hard drives, we concluded that they had not lost their status as public records. *Id*. We also concluded, based on the affidavit of a computer expert specializing in forensic data-recovery services, that the deleted emails might be successfully recovered. *Id*. at ¶ 35. Therefore, we granted a writ of mandamus to compel the public office to recover the deleted emails. *Id*. at ¶ 41.

{¶ 17} Here, unlike in *Toledo Blade*, no evidence was offered that any deleted computer files are readily recoverable. On the contrary, the evidence in this case establishes that the surveillance video for August 30, 2024, requested by Harris is beyond digital recovery; it has been recorded over multiple times, and even if sophisticated forensic-recovery techniques are used, the video likely cannot be recovered. Because the video for August 30, 2024, is not readily recoverable, we deny Harris's motion seeking forensic analysis of the NCCC hard drive.

*2. Relator's Motion for Leave to File Rebuttal Evidence*

{¶ 18} Harris timely moves for leave to file rebuttal evidence. He contends that his proposed evidence will rebut the evidence NCCC submitted to show that it produced all records responsive to his requests. Specifically, Harris wants to rebut evidence that he was provided with a thumb drive containing the requested library security video. Rebuttal evidence becomes relevant only to challenge the evidence offered by an adverse party, and its scope is limited by such evidence. *State ex rel. Mobley v. Powers*, 2024-Ohio-104, ¶ 11. A court has discretion in determining whether to admit rebuttal evidence. *Id*.

{¶ 19} Here, the proposed evidence lacks a proper rebuttal purpose. The motion labels the proposed evidence as exhibits "L.A.-1," "L.A.-2," and "C.S." Exhibits L.A.-1 and L.A.-2 purport to show copies of photographs of a certified-mail envelope sent by Harris in which a corner of the envelope is missing. Exhibit

C.S. purports to show a withdrawal slip authorizing the withdrawal of funds from Harris's inmate account to pay for the certified mail. Harris contends that these exhibits show that the thumb drive was removed from the certified-mail envelope before his case manager sent it to Harris's designated recipient outside the prison. But the fact that Harris paid for certified mail and has a copy of a photograph of a torn certified-mail envelope shows nothing about whether NCCC failed to provide Harris with the records he requested. Moreover, the rebuttal evidence is irrelevant because Harris acknowledged that he received and viewed video for two of the requested days, and NCCC stated that it inadvertently failed to produce the third day of video, which no longer exists.

{¶ 20} Because the proposed evidence lacks a proper rebuttal purpose, we deny the motion for leave to file rebuttal evidence.

### 3. *Relator's Motion for Sanctions for Spoliation of the Evidence*

{¶ 21} Based on his belief that security-camera footage he sought was deliberately deleted, Harris moves for sanctions against NCCC's outside counsel for alleged spoliation of the evidence. He asks this court to impose sanctions and enter a default judgment under Civ.R. 37(E)(2), which delineates sanctions for a party's failure to preserve electronically stored information in anticipation of litigation.

{¶ 22} Harris is not entitled to Civ.R. 37 sanctions. Even assuming that Civ.R. 37 applies to mandamus actions filed in this court, *see* S.Ct.Prac.R. 12.01(A)(2)(b), the evidence does not show that NCCC "acted with the intent to deprive [Harris] of the information's use in the litigation," Civ.R. 37(E)(2). Thus, Harris has failed to prove that NCCC's failure to preserve the requested video warrants the imposition of sanctions. The motion is denied.

### B. Mandamus Claim

{¶ 23} Mandamus is an appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Wells v. Lakota Local*

*Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 11; R.C. 149.43(C)(1)(b). To obtain a writ of mandamus, Harris "must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10. He bears the burden to plead and prove facts showing that he properly requested a record kept by a public office and that the public office failed to make the record available. *State ex rel. Ware v. Beggs*, 2024-Ohio-611, ¶ 11.

{¶ 24} For the reasons stated below, we deny Harris's complaint for a writ of mandamus.

### 1. The Mandamus Claim Is Moot for Harris's First and Third Records Requests

{¶ 25} Evidence submitted by both parties establishes that NCCC produced all the records responsive to Harris's first and third records requests. NCCC presented evidence showing that in October 2024, it produced a thumb drive containing video responsive to his request for library security footage recorded on August 26 and 27, 2024. Because Harris was prohibited from receiving or possessing a thumb drive, his case manager arranged for him to view the video on an NCCC computer. Harris nevertheless argues that because he was never given possession of that thumb drive, NCCC never produced the requested video. However, this argument is not well-taken. When an inmate requests a copy of prison security-camera footage but prison rules prohibit the inmate from possessing a data-storage device like a DVD or thumb drive, the prison fulfills its duty to make the requested record available by permitting the inmate to view the footage. *See State ex rel. Slager v. Trelka*, 2024-Ohio-5125, ¶ 29-30 (denying inmate's mandamus claim for security-camera footage when DVD was contraband under prison rules and prison permitted inmate to view footage). Even though Harris did not choose to view the video until later, the evidence establishes that NCCC produced all the video footage responsive to his first request in October 2024.

**{¶ 26}** Regarding Harris's third request, NCCC notified Harris in early November 2024 that it would provide the kites and grievance records responsive to this request upon his prepayment of the copy costs. He prepaid the copy costs and received the records on November 13. Harris acknowledges that he received all documents responsive to his third request.

**{¶ 27}** "In general, when requested records have been provided to the relator after a mandamus action is filed in a public-records case, the action becomes moot." *State ex rel. Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2024-Ohio-5063, ¶ 25. Upon finding that a writ claim is moot, the correct disposition is to deny the writ. *State ex rel. Ames v. Concord Twp. Bd. of Trustees*, 2025-Ohio-1027, ¶ 33. The evidence submitted in this case shows that after Harris filed his mandamus action, NCCC provided him with the two days of security video responsive to his first request and the kites and grievance records responsive to his third request. Accordingly, Harris's claim for a writ of mandamus as to those records is moot and is denied.

*2. The August 30 Security Video No Longer Exists*

**{¶ 28}** The evidence shows that NCCC inadvertently failed to produce security video responsive to Harris's second request and that the video no longer exists. A record that does not exist cannot be produced. *See State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Cincinnati Bd. of Edn.*, 2003-Ohio-2260, ¶15 (relator not entitled to writ of mandamus to compel "what would be tantamount to an impossible act"). "[A] writ of mandamus will not issue when the uncontroverted evidence shows that the requested documents do not exist." *State ex rel. Hedenberg v. N. Cent. Corr. Complex*, 2020-Ohio-3815, ¶ 7. When a public office establishes by affidavit that all existing public records have been provided, the "attestations in the affidavit may be rebutted by clear and convincing evidence showing a genuine issue of fact that additional responsive records exist." *State ex rel. Frank v. Clermont Cty. Prosecutor*, 2021-Ohio-623,

10

¶ 15. Here, NCCC attests that all existing public records requested by Harris were provided and that the sole record at issue—library security footage recorded on August 30—was not retained and does not exist. Harris provides no contradictory evidence. Because records that no longer exist cannot be obtained through a mandamus action, *Toledo Blade,* 2008-Ohio-6253, at ¶ 27, Harris is not entitled to a writ to compel production of video responsive to his second request.

### C. Other Requested Relief

#### 1. Statutory Damages

{¶ 29} "Separate from whether requested records are produced is whether the production was timely." *State ex rel. Cincinnati Enquirer v. Deters*, 2016-Ohio-8195, ¶ 22. Statutory damages shall be awarded in a public-records mandamus action if the court determines that the public office failed to comply with an obligation under R.C. 149.43(B). R.C. 149.43(C)(2). One of a public office's obligations under the Public Records Act is to make the records available to the requester "within a reasonable period of time." R.C. 149.43(B)(1). Even when a public-records mandamus action is mooted by the production of records, a requester may still be entitled to statutory damages under R.C. 149.43(C)(2). *State ex rel. Suggs v. McConahay*, 2022-Ohio-2147, ¶ 9. Damages are fixed at $100 for each business day, beginning with the day on which the requester filed the mandamus action, up to a maximum of $1,000.[2] R.C. 149.43(C)(2).

{¶ 30} Harris seeks statutory damages for NCCC's alleged failure to timely provide him with the requested records. The issue is whether NCCC failed to produce the records to Harris within a reasonable period.

---

2. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of the ODRC is no longer eligible to receive an award of statutory damages under R.C. 149.43(C), and some provisions have been renumbered. 2024 Sub.H.B. No. 265. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

### a. First Request: Two Days of Security Video

{¶ 31} Harris requested two days of security video in late August 2024, and NCCC made the video available to him in late October 2024. Considering the facts and circumstances of the request—that NCCC immediately acknowledged receipt of the request, engaged in dialogue with Harris, and promptly worked on the record production—this period was not unreasonable.

{¶ 32} "R.C. 149.43(B) does not set forth a deadline by which a public office must respond to a request for copies of public records. The only requirement is that a copy be made available in a reasonable period of time." *Cincinnati Enquirer*, 2016-Ohio-8195, at ¶ 23. The reasonableness of the response time depends on the facts and circumstances of the particular request. *Id*. Moreover, "'R.C. 149.43(A) envisions an opportunity on the part of the public office to examine records prior to inspection in order to make appropriate redactions of exempt materials.'" *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 16, quoting *State ex rel. Warren Newspapers, Inc. v. Hutson*, 1994-Ohio-5, ¶ 19.

{¶ 33} On August 28 and 29, Harris transmitted kites requesting two days of video footage from the prison library's security camera. On August 30, respondent Starcher replied that the video footage would be retained. On September 3, Harris sent a "litigation hold" letter to NCCC's counsel, reiterating his request for the security video. On September 11, NCCC's counsel received the September 3 "litigation hold" letter and proposed in reply on September 20 that the video given in response to his request include only the footage taken during the library's normal business hours. Counsel attests that he never received Harris's September 27 letter in response. Respondent McCurry replied further to Harris's first video request on September 27, stating, "The footage has been preserved and forwarded to MTC lawyers. [T]he next steps will be with them in determining when you receive them."

{¶ 34} On October 15, NCCC's counsel mailed a thumb drive to Harris containing (as pertinent here) the two requested days of video footage. Counsel sent a follow-up letter on October 17, advising that the thumb drive containing the requested video had been mailed and asking Harris to clarify whether he needed the video produced in a different format. Because Harris was not permitted to receive or possess a thumb drive, on October 27, his case manager arranged for him to view the security video on an NCCC computer.

{¶ 35} Here, less than two months passed between when Harris requested the security video and when NCCC produced the video. During that time, NCCC and outside counsel acknowledged receipt of the request and engaged in dialogue with Harris about preservation of the footage and its review by counsel. Considering the nature of the request for security-camera footage, the procedural necessity for NCCC staff to work with outside counsel to determine whether requested videos from prison security cameras are nonexempt and nonprivileged, and the delay occasioned by counsel's not receiving Harris's response to his letter proposing redaction of the footage, we conclude that the security video for these two dates was produced within a reasonable period. *See State ex rel. Mauk v. Sheldon*, 2025-Ohio-1221, ¶ 41 (four-month period found reasonable for production of body-camera footage). Harris has not met his burden to show by clear and convincing evidence that he is entitled to statutory damages for this request.

### b. Second Request: August 30 Security Video

{¶ 36} On August 30, 2024, Harris requested NCCC library security footage for that same day. NCCC thought it had provided the August 30 footage in October but, as discussed above, had inadvertently produced footage for the wrong date. The video for the requested date no longer exists and cannot be produced. Accordingly, NCCC failed to comply with its statutory obligation to

make the requested record (which existed when requested) available within a reasonable time.

{¶ 37} "Statutory damages accrue at the rate of $100 for each business day the office failed to meet one of R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000. R.C. 149.43(C)(2)." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 15. Because more than ten business days have passed since Harris filed this mandamus action, we award the maximum statutory damages of $1,000 for this request.

### c. Third Request: Copies of Kites and Grievance Records

{¶ 38} Harris requested copies of numerous kites and grievance records on September 19, 2024, and NCCC did not respond or make these records available to him until early November, approximately six to seven weeks later. Given the uncomplicated nature of the request, this delay was unreasonable.

{¶ 39} On September 19, Harris requested 11 documents identified by their kite numbers as well as grievance records identified by date. This request was contained within a kite labeled by Harris as "Clarification and reply to McCurry's question" related to his previous requests for the library security footage. Labeling the kite redundant, McCurry closed the request on September 27. NCCC forwarded the September 19 kite to outside counsel. Counsel viewed the request as a litigation hold until Harris identified it as a public-records request in his mandamus action. On November 4, counsel mailed a letter to Harris identified as NCCC's "formal response" to his September 19 request for copies of the kites and grievance records. The letter informed Harris that NCCC would provide him with paper copies of the records once he prepaid the copy costs of $.05 a page. The record does not indicate when Harris received the letter. However, Harris paid the copy costs on November 13, 2024, and received paper copies of the requested documents.

{¶ 40} "Statutory damages will be awarded when a public-records custodian takes an unreasonable length of time to produce the requested records."

*State ex rel. Ware v. Akron*, 2021-Ohio-624, ¶ 18.  Here, Harris submitted his request on September 19 and NCCC mailed him a letter on November 4 informing him that copies were available upon prepayment of copy costs—a delay of six to seven weeks, depending on when Harris received the letter.  NCCC does not suggest that six to seven weeks was a reasonable response time.  Instead, in an apparent effort to explain the delay in response time, NCCC contends that Harris did not label or identify this request as a public-records request pursuant to R.C. 149.43.  However, the Public Records Act "contains no provision requiring that a requester formally label a public-records request as a 'formal public records request,' see R.C. 149.43(B)." *State ex rel. Ware v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-1015, ¶ 16.  Moreover, "it is not necessary to cite a particular rule or statute in support of a records request." *State ex rel. Parker Bey v. Byrd*, 2020-Ohio-2766, ¶ 14.  The only requirement is that a person requesting public records identify the records sought with reasonable clarity.  *See State ex rel. Glasgow v. Jones*, 2008-Ohio-4788, ¶ 17.  NCCC does not argue that the request was ambiguous or that it was unable to identify the records sought.  The evidence shows that Harris identified the kites and grievance records sought by number and date and, thus, with reasonable clarity.

{¶ 41} NCCC also argues that Harris is not entitled to statutory damages, because he "failed to make proper arrangements to pay" for copies of the requested documents.  But this argument misses the point.  The Public Records Act provides that "upon request, . . . a public office or person responsible for public records shall make copies of the requested public record available . . . at cost and within a reasonable period of time."  R.C. 149.43(B)(1).  Under the plain language of the statute, the date for determining whether a public office promptly provided a requested record is when the office "ma[de] copies of the requested public record available at cost," not when the requester actually paid for and received the copies. *Id.*  NCCC did not respond or inform Harris that the records were available until

six to seven weeks after his request. Moreover, even though the Public Records Act envisions an opportunity by the public office to examine and redact records, *see Morgan*, 2009-Ohio-1901, at ¶ 16, NCCC does not argue or set forth any evidence showing that it needed additional time to review or redact these records.

{¶ 42} This court has held that "the absence of *any* response over *a two-month period*" violates the obligation to respond to a public-records request within a reasonable time. (Emphasis in original.) *State ex rel. DiFranco v. S. Euclid*, 2014-Ohio-538, ¶ 21. In contrast, we held a two-month delay to be reasonable when an inmate submitted 17 different records requests by electronic kite to various prison departments and employees, the intended recipients for some of the requests were unidentified, and the prison still adequately responded to all the inmate's requests. *See State ex rel. Berry v. Booth*, 2024-Ohio-5774, ¶ 19-20; *see also State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, ¶ 59 (two-month period found reasonable for redaction and release of eight autopsy reports related to ongoing homicide investigation). The court has held delays of less than two months to be reasonable, but only when the requested documents required significant review and redaction or an extensive search to locate. *See State ex rel. Stuart v. Greene*, 2020-Ohio-3685, ¶ 8 (31 days was reasonable time for public office to produce document that required substantial redaction); *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5108, ¶ 17 (three-week delay in producing over 700 pages of personnel files and five years of Title IX training materials held reasonable, when university promptly acknowledged request and immediately began to compile responsive records); *State ex rel. Shaughnessy v. Cleveland*, 2016-Ohio-8447, ¶ 17 (24 business days was reasonable time to respond to broad request for police reports on multiple incidents spanning two-week period that required office to search for and locate hundreds of pages of responsive documents, exclude nonresponsive documents, and then print and review documents to redact exempt information).

{¶ 43} Here, however, the evidence in the record does not show that NCCC needed to spend time searching for, reviewing, or redacting the requested kites and grievance records. Nor does it show that NCCC acknowledged the request, attempted to communicate with Harris, or promptly worked on compiling the requested records. Given that the document request was not voluminous and identified the records sought with reasonable clarity, we conclude that the six- to seven-week delay in producing the records was unreasonable.

{¶ 44} Because more than ten business days elapsed between the filing of this action on October 10 and NCCC's production of the requested documents in early November, *see Kilbane*, 2022-Ohio-205, at ¶ 15, we award the maximum statutory damages of $1,000 for this request.

### *2. Court Costs*

{¶ 45} Harris requests an award of court costs. Court costs shall be awarded if "the court orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)]." R.C. 149.43(C)(3)(a)(i). Because we deny the writ, we decline to award court costs. *See State ex rel. Howson v. Delaware Cty. Sheriff's Office*, 2023-Ohio-1440, ¶ 26. But even if an award of court costs were otherwise appropriate, Harris filed an affidavit of indigence and has not incurred court costs. *See State ex rel. Mobley v. Bates*, 2024-Ohio-2827, ¶ 16.

### *3. Miscellaneous Costs*

{¶ 46} Harris also requests an award of copy and postage costs incurred in bringing this action. But he cites no authority to support this request, and no provision of the Public Records Act authorizes an award of miscellaneous costs such as copy and postage costs. *See Berry*, 2024-Ohio-5774, at ¶ 21 (relator in public-records mandamus action not entitled to reimbursement for postage and photocopying expenses, which are not court costs). To the contrary, the Public Records Act permits a public office to charge the requester for copying costs. R.C. 149.43(B)(6). Harris's request for miscellaneous costs is denied.

### III. CONCLUSION

**{¶ 47}** Harris's complaint for a writ of mandamus is denied. We award Harris statutory damages of $2,000 for NCCC's failure to timely produce records responsive to two of his three requests. We deny Harris's demand for court and miscellaneous costs. We also deny the motions for an order allowing computer forensic analysis, for leave to file rebuttal evidence, and for sanctions.

Writ denied.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

**{¶ 48}** I concur in the court's judgment denying relator Lionel Harris's request for a writ of mandamus. I also agree with its decision denying Harris's motions to allow computer-forensic analysis, for leave to file rebuttal evidence, and for sanctions for alleged spoliation of the evidence. Further, I concur in the court's judgment denying Harris's request for court costs and miscellaneous costs. While I also agree with the majority that Harris is entitled to an award of statutory damages, I disagree with its determination of the amount of statutory damages he should be awarded.

**{¶ 49}** Respondents, Darrick Starcher and Richard McCurry, are employees of Management & Training Corporation ("MTC"). MTC operates the North Central Correctional Complex ("NCCC")—the prison in which Harris is incarcerated and the prison to which Starcher and McCurry are assigned. Because the MTC/NCCC employees did not timely or appropriately respond to Harris's four public-records requests, I would award Harris $4,000 in statutory damages. Because the court does otherwise, I dissent from the statutory-damages portion of its judgment.

### HARRIS'S REQUESTS AND NCCC'S RESPONSES

**{¶ 50}** On August 27, 2024, Harris transmitted electronic kite No. 480220051 to the administration of NCCC asking it to hold the August 26, 2024

video-surveillance footage of the NCCC library "beyond the regular retention schedule." Harris called his request a litigation-hold letter. No one responded to his request that day.

{¶ 51} The following day, Harris transmitted electronic kite No. 480865791 to the warden's office, stating that the kite was a "[p]ublic records request to [the] public records officer." In that kite, Harris requested the August 26 and 27, 2024 library-video-surveillance footage "and the means by which to view the footage." He also requested "permission to possess the associated disc containing the videos." In the early morning of August 29, Mary VanBuskirk, an MTC employee who is assigned to assist NCCC's warden, closed kite No. 480865791, stating, "This request needs to be sent to Investigators office."

{¶ 52} Later that same morning, Harris transmitted electronic kite No. 480962231 to the administration of NCCC. Harris labeled the kite a public-records request. In the request's details, Harris again indicated that he was requesting the library-video-surveillance footage for August 26 and 27. He further stated that his request was also a litigation-hold letter for the video footage from those days, and he requested a "means to view the video footage." No one responded to this request until September 5.

{¶ 53} On August 30, just before 1:00 p.m., Starcher closed Harris's original August 27 litigation-hold request, electronic kite No. 480220051, stating: "[The video] evidence will be retained according to policy. Footage may be released upon subpoena."

{¶ 54} Later that same day, Harris transmitted electronic kite No. 481485551 to the administration of NCCC, labeling the kite as both a litigation-hold letter and a public-records request. In the request, Harris sought the August 30 library-video-surveillance footage and a means to view it. On September 5, Starcher closed electronic kite No. 481485551, stating, "This request was answered in a previous kite."

{¶ 55} On September 13, a subpoena for the requested video footage was issued to Starcher by the Seventh District Court of Appeals in a different case filed by Harris.

{¶ 56} Then, on September 19, Harris transmitted electronic kite No. 487397751 to the administration of NCCC. In this kite, Harris reiterated his unfulfilled request for the library-video-surveillance footage and requested copies of several kites, a grievance, and an informal complaint, the response to that complaint, the appeal to the chief inspector, and the chief inspector's decision.

{¶ 57} McCurry closed electronic kite No. 487397751 on September 27, stating:

> The footage has been preserved and forwarded to MTC lawyers. [T]he next steps will be with them in determining when you receive them. If/when it is determined that the data is able to be released, they will complete the process of issuance. Persistent and redundant requests by you or anyone else to this office or any other employee of NCCC will not speed up or assist this process in any way. Our obligation to preserve the requested data is fulfilled and it is now in the hands of our lawyers.

{¶ 58} In addition to the kites mentioned above, Harris sent correspondence to Edward O. Patton, an attorney for MTC, about the video footage he had requested from NCCC. On September 3, Harris sent Patton a litigation-hold letter. In the letter, Harris stated that Starcher had refused his request that NCCC retain the library-video-surveillance footage for August 26, 27, and 30 beyond the regular retention period.

{¶ 59} In a letter dated September 20, Patton indicated to Harris that he had received Harris's litigation-hold letter "on or about" September 11 and that NCCC

had "preserved the library video footage for the requested dates." Patton's letter then stated: "In an effort to produce the requested items, I would suggest that only the normal business hours of the NCCC library [video footage] be produced since it would not make sense to produce videos that depict the library during non-business hours." The letter ended as follows: "We look forward to your advice regarding this issue."

{¶ 60} On September 27, Harris wrote Patton a letter, rejecting his suggestion that NCCC's providing him with the requested video-surveillance footage with the nonbusiness hours of the footage redacted would satisfy his public-records request. Patton asserts that he did not receive this letter.

{¶ 61} On October 10, Harris commenced this mandamus action.

{¶ 62} On October 15, Patton enclosed a thumb drive purportedly containing the August 26, 27, and 30 library-video-surveillance footage in a letter addressed to Harris. Patton said in the letter that he had received the video-surveillance footage from McCurry.

{¶ 63} In a letter dated October 17, Patton reiterated to Harris that the requested video-surveillance footage was on the thumb drive that was mailed on October 15 and that that thumb drive satisfied both the subpoena issued to Starcher and Harris's public-records request.

{¶ 64} On October 28, Harris wrote to Patton and stated that NCCC employees had withheld the thumb drive from him, that the Supreme Court case number for his mandamus action was 2024-1428, and that he had not been provided with copies of the kites and grievance that he had previously requested.

{¶ 65} On November 4, Patton responded to Harris, suggesting that his September 19, 2024 kite—kite No. 487397751—which McCurry had closed on September 27, had not been a proper public-records request:

It should be noted that your request was not labeled or identified as a public records request made by you pursuant to O.R.C. § 149.43 *et seq*.

[NCCC] will treat your request for copies as an attempt by you to make a public records request pursuant to O.R.C. § 149.43 *et seq*. You have been advised by [NCCC] staff on prior occasions that the above requested kites, grievances, informal complaints, appeals to chief inspector, and chief inspector decisions are electronically available and possessed by you on your State issued electronic tablet.

In closing, Patton told Harris that if he was requesting "paper copies," then he had to "submit a cash slip request for payment."

{¶ 66} Patton also executed an affidavit on November 4. In the affidavit, he avers: "[Harris's September 19 kite] merely requested paper copies of certain NCCC records. At no time, did [Harris] identify the copies as a formal public records request pursuant to R.C. § 149.43."

{¶ 67} Also on November 4, Thomas Watson, the warden for NCCC, executed an affidavit. In it, Watson avers that he is familiar with the requirements of Adm.Code 5120-9-19(B)(3), which he says "controls the types of items and materials" incarcerated persons can possess. According to Watson, Adm.Code 5120-9-19(B)(3), which prohibits an incarcerated person from possessing "videotapes, compact discs, computer discs, or material in any other form or medium not otherwise authorized by [Adm.Code 5120-9-19] without prior approval from the managing officer or designee," prohibits Harris from possessing a thumb drive. And thus, he avers, Harris is prohibited from possessing the thumb drive Patton sent him containing the requested video footage.

**OHIO'S PUBLIC RECORDS ACT**

{¶ 68} Ohio's Public Records Act[3] does not require a requester to use a particular form or particular words or to cite a particular statute to make a public-records request. R.C. 149.43. Under the act, a public office or public-records custodian must take one of three actions upon receipt of a public-records request: (1) produce the requested records, R.C. 149.43(B)(1); (2) deny the request as ambiguous and provide the requester with the information and opportunity necessary to revise his or her request, R.C. 149.43(B)(2); or (3) deny the request with an explanation of why the request was denied, including the legal authority, under R.C. 149.43(B)(3). Each of these divisions of R.C. 149.43(B) uses the word "shall," making a records custodian just as obligated to properly deny a records request under R.C. 149.43(B)(2) and (3) as it is to produce the requested records under R.C. 149.43(B)(1).

{¶ 69} A requester is entitled to statutory damages of "one hundred dollars for each business day during which the public office . . . failed to comply with *an obligation* in accordance with [R.C. 149.43(B)], beginning with the day on which the requester files a mandamus action to recover statutory damages, up to a maximum of one thousand dollars." (Emphasis added.) R.C. 149.43(C)(2).

{¶ 70} To find that a requester is not entitled to damages when a records custodian fails to properly deny a request goes against the statute's unambiguous language. The General Assembly easily could have written, "A requester is entitled to statutory damages if a public office or person responsible for public records fails to timely produce a requested record," and left it at that. But it did not. Instead, the General Assembly said that a requester is entitled to statutory damages if the

_____

3. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of the ODRC is no longer eligible to receive an award of statutory damages under R.C. 149.43(C), and some provisions have been renumbered. 2024 Sub.H.B. No. 265. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

public office or person responsible for public records fails "to comply with *an obligation*." (Emphasis added.) *Id.* The indefinite article "an" implies that there is more than one relevant obligation, and R.C. 149.43(C)(2)'s reference to R.C. 149.43(B) generally, rather than to R.C. 149.43(B)(1) specifically, means that the failure of a records custodian to comply with any obligation under R.C. 149.43(B) makes the requester eligible for statutory damages.

{¶ 71} Because properly denying a records request is plainly one of the obligations listed in R.C. 149.43(B), a requester is entitled to statutory damages if a public office or records custodian fails to properly deny his or her request before he or she files an action for a writ of mandamus.

### HARRIS IS ENTITLED TO STATUTORY DAMAGES

{¶ 72} Before addressing the four public-records requests Harris made, it is important to start at the beginning: Harris's litigation-hold letter.

{¶ 73} On August 27, 2024, Harris transmitted by kite a litigation-hold letter to the administration of NCCC, requesting that the August 26, 2024 library-video-surveillance footage be retained "beyond the regular retention schedule." No one responded to his request that day.

{¶ 74} The following day, Harris transmitted by kite a public-records request to the warden's office asking for the August 26 and 27, 2024 library-video-surveillance footage. Harris's kite also contained two additional requests: "the means by which to view the footage" and "permission to possess the associated disc containing the videos."

{¶ 75} Under Adm.Code 5120-9-19(B)(3), incarcerated persons can obtain prior approval to possess material in any form of medium not authorized by Adm.Code 5120-9-19. So Harris, recognizing that his request for video footage would likely be fulfilled in the form of a medium he was not authorized to possess, was asking for permission in advance to possess the material. But VanBuskirk did

24

not address Harris's public-records request; she simply closed his request, stating that it needed to be sent to the "Investigators office."

{¶ 76} After receiving VanBuskirk's response, Harris tried again to request the August 26 and 27 video footage. On August 29, he transmitted by kite a public-records request to the administration of NCCC requesting the video footage for those two days. At the time this public-records request was made, Starcher had not responded to Harris's August 27 litigation-hold letter. On August 30, Starcher responded to Harris's August 27 request, stating that the video "evidence" would be retained according to policy and *may be released upon subpoena*.

{¶ 77} Later that same day, Harris transmitted a kite to the administration of NCCC in which he made both a public-records request and a litigation-hold request for the August 30 library-video-surveillance footage. Starcher responded to this public-records request on September 5 by saying that the request had already been answered in a "previous kite."

{¶ 78} On September 13, a subpoena for the requested video footage was issued to Starcher by the Seventh District Court of Appeals in a different case filed by Harris.

{¶ 79} Then, on September 19, Harris transmitted to the administration of NCCC by kite what he called in the kite's "Summary" section a "[c]larification and reply to McCurry's question." Harris's language in the kite was straightforward. He wanted the video-surveillance footage of the NCCC library that he had previously requested and copies of several kites, a grievance, and an informal complaint, the response to that complaint, the appeal to the chief inspector, and the chief inspector's decision.

{¶ 80} McCurry's response to this kite can be summed up as "stop bothering us": "Persistent and redundant requests by you or anyone else to this office or any other employee of NCCC will not speed up or assist this process in any way. Our obligation to preserve the requested data is fulfilled and it is now in

the hands of our lawyers." McCurry said nothing about Harris's requests for copies of the records.

{¶ 81} A requester is entitled to statutory damages when a public office or records custodian fails to comply with any obligation under R.C. 149.43(B). On receipt of Harris's public-records requests, there were only three choices for the MTC/NCCC employees VanBuskirk, Starcher, and McCurry: (1) produce the requested records, (2) deny the request as ambiguous and provide Harris with the information and opportunity necessary to revise his request, or (3) deny the request and explain why. Because they did not do any of the above, Harris is entitled to statutory damages for each public-records request he transmitted electronically to the MTC/NCCC employees, and there were four in all. Damages are fixed at $100 for each business day, beginning with the day on which the requester filed the mandamus action, up to a maximum of $1,000. R.C. 149.43(C)(2). Therefore, I would award him $4,000 in statutory damages.

## CONCLUSION

{¶ 82} Ohio's Public Records Act is not complicated. The statute enacted by the General Assembly does not require a public-records requester to use a particular form, magical words or phrases, or to cite R.C. 149.43. All the requester must do is specify to the public office or the records custodian what record he or she is seeking. Harris did just that.

{¶ 83} He wanted the August 26, 27, and 30 video-surveillance footage from the NCCC library and copies of several kites, a grievance, and an informal complaint, the response to that complaint, the appeal to the chief inspector, and the chief inspector's decision.

{¶ 84} Because the MTC/NCCC employees have not timely or properly responded to Harris's public-records requests, he is entitled to $4,000 in statutory damages. Since the court holds otherwise, I dissent from the statutory-damages portion of its judgment.

_____

Lionel Harris, pro se.

Mansour Gavin, L.P.A., Edward O. Patton, and Katie E. Epperson, for respondents.

_____